Bessie Caseldine, the appellant, a resident of Missouri, on September 12, 1939, filed her claim against the estate of Nancy A. Goldsworthy, deceased, pending in the District Court.
The claim consists of nine separate and distinct items as appears in the court's findings and conclusions quoted post. Items numbered 1 to 6 and number 8 are for personal services rendered by claimant to the deceased in Missouri during a period of time from July 1, 1917 to an unnamed date *Page 408 
in July, 1930. Item No. 7 is for maintaining and caring for the grave of the husband of Mrs. Goldsworthy from 1923 to 1938 in the sum of $50. Item No. 9 is for money expended and advanced for Nancy A. Goldsworthy for postage from October, 1923 to May 31, 1938, amounting to $9.60.
The executor, the appellee, filed written objections to said claim and each and every item thereof as follows: "* * * (1) that each and every item of the claim was barred by the Statute of Limitations of the State of Missouri and also of the State of New Mexico; (2) that the claim was not corroborated by any promise in writing to pay the same by the deceased, and (3) that the said claim was wholly void and without force and effect, and was not a binding obligation of the Estate of the deceased, and should be denied."
The case was tried by the court, without a jury. The claimant offered in evidence the testimony of five witnesses, all by depositions. No testimony was offered by the Executor in resistance to the claim.
The court took the case under advisement and on December 27, 1939, rendered its notice of decision as follows:
"After considerable wrestling with the briefs and authorities, I have reached the conclusion that as the indebtedness was not contracted in New Mexico and did not accrue herein, that it is barred by our Statute of Limitations except for the letter written by Mrs. Goldsworthy and attached to the deposition. Both of these questions were very close.
"An examination of the deposition does not disclose that any specific amount was agreed upon for board and nursing, so that the recovery thereon will have to be on quantum meruit. Additional proof will have to be offered as to the reasonableness of the claim. The claim for storage, caring for the grave, and postage will be disallowed on account of lack of corroboration. I will give the claimant an opportunity to take additional depositions on the reasonable value of the nursing services and board and room."
The question of reasonableness of the claim was met by a stipulation of the parties to the effect that if the services were rendered as set out in Items 1, 2, 3, 4, 5, and 8, the demands therefor are reasonable. In view of the record, we conclude that Item No. 6 presented a claim reasonable in amount, being less than a dollar a month for the services alleged to have been rendered.
On March 20, 1940, the court filed a memorandum opinion in which it withdrew the former memorandum notice of decision heretofore quoted. In this second decision, the court's principal if not the sole reason for reversal of its former holding was that a letter written by Mrs. Goldsworthy to claimant in 1936, which concluded with the words: "I will pay you soon.", did not, as the court had originally thought, serve to revive the indebtedness, the court saying: "There are many items in the claim and the letter is, in my opinion, too indefinite upon which to base a revival or *Page 409 
written acknowledgment of the indebtedness."
The same day the court made its findings of fact and conclusions of law, the material portions of which are as follows:
"1. That decedent was a resident of New Mexico for approximately three months prior to the time of her death and had never been a resident of this State at any other time.
"2. That the claims for board on the items barred by limitations in support thereof are indefinite and rather unsatisfactory, while the items within the six year period are intermingled with the old items and the unbarred part can not from the testimony be segregated.
"3. That the decedent was never a member of claimant's family.
"4. That the decedent was a resident of the State of Missouri at the time the services were performed by claimant, other than postage and storage charges incurred after decedent's removal from the State of Missouri in 1923. From 1923 until decedent's removal to New Mexico, a short time prior to her death, she was a resident of the State of California.
"5. That the letter attached to the depositions and received in evidence was written by decedent on June 29, 1936.
"6. That the executor has submitted no evidence to show that the claim as submitted by the claimant, is not the indebtedness mentioned by decedent in her said letter.
"7. That the claim herein consists of nine separate and distinct items as follows:
1. Nursing and boarding the said Nancy A. Goldsworthy from July 1, 1917 to January 1, 1918. 6 months at $40 per month ............. $240.00
2. Boarding said Nancy A. Goldsworthy for the months of February, March, April, May and June 1918. 5 months at $30 per month ..... 150.00
3. Boarding said Nancy A. Goldsworthy for the months of April, May, June, July and August 1919. 5 months at $30 a month ....... 150.00
4. Boarding said Nancy A. Goldsworthy for the months of March, April, May and June 1920. 4 months at $30 a month .............. 120.00
5. Boarding said Nancy A. Goldsworthy for the months of September, October, November and December 1921. 4 months at $30 a month ........................................ 120.00
6. Storage and handling of trunks of the said Nancy A. Goldsworthy and storage and handling of other household goods for her for five years, 1918 to 1923 ....................................... 50.00
7. Maintaining, decorating and caring for her husband's grave and her lot from 1923 to 1938, inclusive, which required the claimant to drive a distance of 25 miles to perform said services ....................................................... 50.00 *Page 410 
Amount Brought Forward ............................................. $880.00
8. Boarding said Nancy A. Goldsworthy for two weeks in 1923 and for two days in July 1930 ...................................... 16.00
9. Money expended and advanced for the said Nancy A. Goldsworthy for postage to mail the Braymer Bee, a weekly newspaper of Braymer, Missouri, from October 1923 to May 31, 1938 ........... 9.60 _______ $905.60
"8. That the only reference in the letter of June 29, 1936 is that part reading `will pay you soon.'
 Conclusions of Law
"Based upon the foregoing findings of fact, I make the following conclusions of law:
"1. That all items set out and showing to have been incurred more than 6 years prior to the death of decedent are barred by limitation.
"2. That the letter of June 29, 1936 is so indefinite and vague as to the debt meant that it is insufficient to revive the indebtedness.
"3. That the items of indebtedness not barred on their face are not segregated and are so intermingled with the barred items that it is impossible to determine their amount.
"4. That the testimony offered in corroboration is vague and indefinite as to amounts, though if not barred might besufficient, but there is no corroboration on the items not barred by limitations." (Italics supplied)
We will decide the matter of corroboration first.
In the second memorandum the court said: "As to that part of items 7, 8, and 9 which are not barred, they are intermingled with barred items to such an extent that it is impossible from the deposition introduced in evidence or the claim to ascertain the amounts claimed to have accrued within the period not barred, and further there is no sufficient testimony corroborating theselatter items." (Italics supplied)
This indicates that the court did not specifically find that the item said to be barred were without corroboration. This also appears in the court's formal conclusion number 4 that if the claims were not barred the testimony offered in corroboration "might be sufficient". Furthermore, we find the court made an order relative to the findings and conclusions requested by the parties in which it is recited that: "* * * all requested findings of fact and conclusions of law of the parties in conflict with those made by the court be, and they are hereby denied, * * *."
Among plaintiff's requested findings of fact is the following: "That the claim of Bessie Caseldine has been corroborated by other material evidence." It would be difficult to say that this requested finding was denied, because it is not in conflict with any finding the trial court made except *Page 411 
as to Items 7 and 9, which the court specifically found to be uncorroborated.
On the other hand, the executor made no specific request for a finding of fact that the claim was not corroborated. However, the executor did request a conclusion of law as follows: "That the evidence of the Claimant regarding said alleged indebtedness is not corroborated by other material evidence in accordance with the Statutes of the State."
It would have been inconsistent to have given this conclusion of law in view of what the court did find and conclude that as to Items 1 to 6 the evidence of corroboration "might be sufficient". It is manifest from the record that the change of view of the court from allowance of certain items to disallowance thereof was due solely to a change of opinion relative to the application of the law of limitations without regard to the question of corroboration.
We are disposed to agree with the objector's counsel in his brief that: "From the opinion of the trial court (Tr. 19) it does not appear that the court gave much consideration to the question of corroboration of the claim, he having already denied the claim on account of its being barred by the statute of limitations."
Our appraisal of the evidence, in view of this state of the record, is that the items not found by the court to be uncorroborated are sufficiently so corroborated. We accept as correct the court's disallowance of Items 7 and 9 for the reasons given by the court. We find that said reasons do not apply to the remaining items of the claim.
We now turn to the more important question of the application of the statute of limitations. The statute involved (Sec. 83-107, N.M.S.A. 1929) is as follows: "If, at any time after the incurring of an indebtedness or liability or the accrual of a cause of action against him or the entry of judgment against him in this state, a debtor shall have been or shall be absent from or out of the state or concealed within the state, the time during which he may have been or may be out of or absent from the state or may have concealed or may conceal himself within the state shall not be included in computing any of the periods of limitation above provided."
The learned trial judge, upon the earnest insistence of counsel for appellee, found a meaning in the statute which would be clearly expressed by inserting the phrase "in this state" immediately after the word "him", so as to make the same read: "If, at any time after the incurring of an indebtedness or liability or the accrual of a cause of action against him inthis state or the entry of judgment against him in this state, a debtor shall have been or shall be absent from or out of the state or concealed within the state, the time during which he may have been or may be out of or absent from the state or may have concealed or may conceal himself within the state shall not be included in computing any of the periods of limitation above provided." *Page 412 
It is contended by appellee that the legislative intent would be elucidated by interpolating in the statute the italicized words "in this state".
Sutherland on Statutory Construction, 2nd Ed., Sec. 408, says: "Statutes as well as other writings are to be read and understood primarily according to their grammatical sense, unless it is apparent that the author intended something different. In other words, it is presumed that the writer intended to be understood according to the grammatical purport of the language he has employed to express his meaning."
In 59 C.J., Statutes, Sec. 583, it is said: "By what is known as the doctrine of the `last antecedent,' relative and qualifying words, phrases, and clauses are to be applied to the words or phrase immediately preceding, and are not to be construed as extending to or including others more remote."
So, reading the statute in the light of these rules of construction, we hold that the qualifying phrase "in this state" appearing after the phrase "entry of judgment against him" immediately preceding does not extend to the more remote antecedent, "incurring of an indebtedness or liability or the accrual of a cause of action against him."
We see no cogent reason to strive to discover a contrary legislative intent. In the first place, the law favors right of action rather than the right of limitation. Gresham v. Talbott,326 Mo. 517, 31 S.W.2d 766. Therefore, a statute which tolls the statute of limitations should be liberally construed in order to accomplish that purpose.
Secondly, since our courts are open to the assertion of causes of action accruing in other states, there is no apparent reason why the legislature should have intended to discriminate in the application of the statute tolling the statute of limitations. In view of the principles of comity and the desirability for the uniformity of laws, we should not discover in a statute an intention to discriminate as to the place where the cause of action accrued, unless such intention is plain and unescapable. In Cvecich v. Giardino, 37 Cal.App.2d 394, 99 P.2d 573, 576, it was said: "Moreover, these cases point out, the courts should not discriminate against nonresident plaintiffs." In the case of Eingartner v. Illinois Steel Co., 94 Wis. 70, 68 N.W. 664, 666, 34 L.R.A. 503, 59 Am.St.Rep. 859, will be found an elaborate and helpful discussion supporting the view that it has not been the policy of the states to discriminate in favor of its own citizens as against the citizens of another state, and that it has not been the practice to discriminate between causes of action arising in our state as against causes of action arising in another state when it comes to the matter of enforcing such causes of action. In the course of the opinion, the court said: "We are entirely satisfied that one of the `privileges and immunities' referred to in the constitutional provision is the right to bring and maintain an action in the courts of the state. *Page 413 
Any citizen of this state may bring an action in the circuit court of this state upon a transitory cause of action arising in another state, and against a citizen of another state, provided he can obtain jurisdiction of the person of the defendant in this state. This is one of the rights guarantied him under our constitution and laws." See also Ruggles v. Keeler, 3 Johns, N Y, 263, 3 Am.Dec. 482.
In Wood on Limitations, 4th Ed., Sec. 244, there is a discussion and recapitulation of statutory provisions from most of the states with reference to absence of defendant from the state. From a reading of this section, we discover only two states where the provisions seem to attach any significance to the place where the cause of action accrued. It is said by Mr. Wood that in Mississippi the statute reads: "`If, after any cause of action has accrued in this state,' the defendant `be absent from and reside out of the state.' etc." Code Miss. 1930, § 2310.
The situation in Mississippi, which is exceptional and tends to prove the rule, is described in Note 38 to Sec. 392, 37 C.J., Limitation of Actions, cited to the text: "Where the cause accrues in another state and defendant is a resident of the state of the forum, the statute of the latter state runs, and the statute rule that absence suspends the operation of limitations applies, although both parties reside out of the state, and in the state where the cause accrued and where suit might have been brought, the statute of the state of the forum running only from the time defendant comes in to that jurisdiction, * * *" The note says: "(d) In Mississippi (1) it was held that, where the parties had resided in Tennessee and the cause of action was barred there, when they went to Mississippi, the action was not barred in the latter state. Perkins v. Guy, 55 Miss. 153, 30 Am.Rep. 510. (2) But the court threw out a suggestion of the wisdom of meeting such a case by legislation, which suggestion is said to have led to the insertion in a later statute of the words `in the state,' after the words `if after any cause of action shall have accrued.' Robinson v. Moore, 76 Miss. 89, 103, 23 So. 631 [633]." Wood on Limitations also says in the section cited: "In Indiana, the time during which the defendant is `a nonresident of the state or absent on public business' is not counted; but if he resides in another state until by the laws thereof the statute has run, he may set up the bar to any cause of action which did not arise in Indiana."
It has been suggested that unless we give the statute the construction contended for by the appellee the courts of this state will be crowded with stale claims from abroad to the exclusion of other legitimate business. We doubt if this is so, but even if the supposed evil might exist, it would be something to be avoided or corrected by the legislature. In Mason v. Union Mills Paper Mfg. Co., 81 Md. 446, 32 A. 311, 314, 29 L.R.A. 273, 48 Am.St.Rep. 524, it is said:
"In [Fairfax Forrest, etc.] Co. v. Chambers [75 Md. 604,23 A. 1024], it was held *Page 414 
that: `Our courts have jurisdiction in regard to contracts whether made in or out of this state; and where the suit is brought by a nonresident against a nonresident defendant upon a foreign contract, if the defendant voluntarily appears, and the case is tried upon its merits, the validity of a judgment rendered in such a case cannot be questioned.' There, as here, the defendant was a nonresident corporation, and the proceedings were begun by suing out a foreign attachment. If, then, our courts have jurisdiction in respect to, and the section in question is general enough to include, foreign contracts, we can see no reason why they should not be held to be embraced within its terms. To exclude them would be to deprive citizens of other states of rights and privileges to which they are entitled. Le Roy v. Crowninshield, Fed.Cas. No. 8,269, 2 Mason [151] 157; Paine v. Drew [44 N.H. 306, 314]. But it was urged that to adopt the liberal construction, and thus assume jurisdiction over foreign litigants, would make the courts of this state the battle ground on which would be waged a never-ending war. The danger, if any, is more imaginary than real.
"In Paine v. Drew [44 N.H. 306, 314], Sargent, J., who delivered the opinion of the court in that case, said: `The objection that our courts will be crowded with stale claims from abroad, to the exclusion of their legitimate business is purely imaginary. The fact that this question is now for the first time directly raised is a sufficient answer to the objection.'"
In Hale v. Lawrence (Howe v. Lawrence), 21 N.J.L. 714, 1 Zab. 714, 47 Am. Dec. 190, is an interesting discussion of general principles applicable from which we quote: "In the case of Le Roy v. Crowninshield [Fed.Cas. No. 8,269], 2 Mason 151, Judge Story has discussed at length the principles arising from the statute of limitations, and remarks that there are some doctrines so well established that it would be a waste of time to defend them. Among these are the following: `That remedies must be according to the place where the action is brought.' `That every nation gives to foreigners the same right to enforce their rights as it does to its own citizens.' `That a remedy against a person may be maintained in a foreign forum, though barred in the place where the contract was made.' `That laws of one country have no extraterritorial force, except by the comity of nations.' If these principles be true, then the plaintiff is not barred of his action here, unless he is barred by our statute. I can find no such bar either in the words, or in any fair interpretation of the statute, and I am unwilling to add to, or take from it. In Clementson v. Williams, 8 Cranch 72 [3 L.Ed. 491], Chief Justice Marshall said: `That the statute of limitations was entitled to the same respect with other statutes, and ought not to be explained away.' Justice Buller said, `We are bound to take an act of Parliament as it is made — a casus omissus can in no case be supplied by a court of law.' [Jones v. Smart], 1 T.R. 52. Lord Tenterden said, `There is always danger in giving effect to what *Page 415 
is called the equity of a statute, and it is much safer and better to rely on, and abide by the plain words, although the Legislature might possibly have provided for other cases, had their intention been directed to them.' [Brandling v. Barrington], 6 Barn. Cress. 475, in Fisher v. Harnden [Fed.Cas. No. 4,819], [1] Paine [55] 61, Justice Livingston said, `The court disclaims all right or inclination to put on the statute of limitations any other construction than the words import. It is as much a duty to give effect to these laws, with which courts however sometimes take great liberties, as to any other which the Legislature may pass. When the will of the Legislature is clearly expressed, it ought to be followed without regard to consequences, and a construction derived from its reason and spirit, should never be resorted to, but where the expressions are so analogous as to render such mode of interpretation unavoidable.' And in the case before cited [Le Roy v. Crowninshield, Fed.Cas. No. 8,269], 2 Mason 151, Judge Story said `he would not consider what in theory ought to be the law upon philosophical and judicial reasoning, but follow the humbler duty of administering the law as he finds it.'"
It has been suggested, though not the basis of the trial court's decision and not urged here by appellee in support of the judgment, that when a cause of action has been fully barred by the laws of the state, territory or country in which it originated, said bar should be a complete defense to any action thereon in any of the courts of this state. This may be so, but it is a matter of legislative concern and not ours. This result has been accomplished in a number of states. In Cvecich v. Giardino, supra, a California statute is referred to as follows: "Section 361 provides: `When a cause of action has arisen in another state, or in a foreign country, and by the laws thereof an action thereon cannot there be maintained against a person by reason of the lapse of time, an action thereon shall not be maintained against him in this state, except in favor of one who has been a citizen of this state, and who has held the cause of action from the time it accrued.'" Code Civ.Proc. § 361.
It also appears that Colorado Compiled Laws, 1921, Sec. 6407, provides that where a cause of action has arisen in another state and is barred by reason of the lapse of time, it is barred in Colorado. It also appears that in 1899 the Missouri legislature passed a statute relating expressly to limitations applicable to foreign causes of action which were sued on in Missouri. The amendment provided for a new section to be known as Sec. 6779a of the Revised Statutes of Missouri, 1899, and reads as follows: "(Section 1.) Section 6779a. Whenever a cause of action has been fully barred by the laws of the state, territory or country in which it originated, said bar shall be a complete defense to any action thereon, brought in any of the courts of this state." Laws Mo. 1899, p. 300.
Our statutes contain no such provisions. *Page 416 
We find nothing in Stern v. Bates, 9 N.M. 286, 50 P. 325; Lindauer Mercantile Co. v. Boyd, 11 N.M. 464, 70 P. 568; Orman v. Van Arsdell, 12 N.M. 344, 78 P. 48, 67 A.L.R. 438, or Bunton v. Abernathy, 41 N.M. 684, 73 P.2d 810, contrary to the views herein expressed. To the contrary, the history of our present statute, as elucidated in these decisions, lends force to our appraisal. In none of them was the place of origin of the cause of action deemed of any significance.
Our statute, as applied to the case at bar, results in accordance with the general rule announced in 17 R.C.L., Limitations of Actions, Sec. 199, as follows: "If the cause of action arose out of the state, it is sufficient to save the statute from running in favor of the party to be charged until he comes within its jurisdiction."
So it appears that action upon the claim could have been maintained here during the three months immediately prior to the death of the decedent Mrs. Goldsworthy, and the statute of limitations would not have been a bar to such action because, as found by the court, she had not been a resident of this state at any other time.
From all of the foregoing, it appears that the judgment of the trial court must be reversed. The cause is remanded with directions to allow all of said claim except Items Nos. 7 and 9, and enter judgment thereon, and otherwise award relief to claimant not inconsistent with the views herein expressed.
It is so ordered.
BRICE, C.J., and SADLER and MABRY, JJ., concur.