754 P.2d 529

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Vincent Gunner WIBERG, Jr.,
Defendant–Appellant.**

No. 9964.

Court of Appeals of New Mexico.

March 17, 1988.

Certiorari Denied April 20, 1988.

Hal Stratton, Atty. Gen., Anthony Tupler, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Jacquelyn Robins, Chief Public Defender, Kerry Kiernan, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

GARCIA, Judge.

Following a jury trial, defendant, Vincent Wiberg, was convicted of driving while under the influence of alochol, in violation of NMSA 1978, Section 66–8–102(A) (Repl. Pamp.1987); vehicular homicide while driving under the influence of alcohol, in violation of NMSA 1978, Section 66–8–101(A) (Repl.Pamp.1978); great bodily harm by vehicle while driving under the influence of alcohol, in violation of Section 66–8–101(B); and reckless driving, in violation of NMSA 1978, Section 66–8–113(A) (Repl.Pamp. 1987). He appeals from his convictions. We affirm in part and reverse in part.

ISSUES

Several issues were raised in defendant's docketing statement and in his motion to amend. Of these, four have been briefed. The remaining issues are deemed abandoned. *See State v. Fish*, 102 N.M. 775, 701 P.2d 374 (Ct.App.1985). We discuss the following four issues: (1) whether the trial court erred in denying defendant's motion to suppress the results of a blood-alcohol test, since the nurse who withdrew the blood was not employed by a physician or hospital; (2) whether defendant's right to an impartial trial was denied by the trial court's failure to excuse, for cause, a juror who expressed reservations about the use of alcohol; (3) whether driving under the influence of alcohol (DWI) is a lesser included offense of vehicular homicide while driving under the influence of alcohol; and (4) whether defendant's reckless driving conviction merges with his vehicular homicide conviction.

FACTS

Defendant had been drinking. He admitted consuming at least two bourbons with beer chasers earlier in the evening. While

operating his truck at a speed of approximately 40 miles per hour, defendant failed to stop at a stop sign, ran through the intersection and collided with a motorcycle on which Dennis Trujillo and Audra Fasulo were riding. Trujillo was killed and Fasulo suffered severe disfiguring and disabling injuries.

Defendant was arrested at the scene for DWI. Due to defendant's own injuries, no field sobriety tests were conducted. He was escorted to the University of New Mexico Hospital. Officer Conner Dailey testified that when he observed defendant at the hospital, he had an odor of alcohol on him, his eyes appeared bloodshot, his speech was slurred, and while sitting on the hospital bed, he swayed back and forth.

At the hospital, Sherman Henderson (Henderson), a licensed registered nurse, withdrew a sample of defendant's blood approximately two hours after the accident. Henderson was not, however, employed by a hospital or physician at the time he obtained a sample of defendant's blood. Rather, he was employed by Western Temporary Services, an agency under contract with the Albuquerque Police Department, to draw blood samples, test and screen blood. Defendant's blood sample indicated that he had a .16 percent blood-alcohol level.

Defendant moved to suppress the test results contending that Henderson was not qualified to extract the blood sample because he was neither employed by a hospital nor a physician. The motion was denied. Subsequently, test results of the blood sample were introduced at defendant's trial.

ISSUE 1 (Admissibility of blood-alcohol test results.)

■■■ Defendant's chief contention is that NMSA 1978, Section 66–8–103 (Repl. Pamp.1987) requires that a nurse who withdraws blood for a blood-alcohol test be employed by a hospital or physician. Defendant then argues that Section 66–8–103; NMSA 1978, Sections 66–8–109(A) and 66–8–110(A) (Repl.Pamp.1987) require that blood-alcohol test results based upon blood withdrawn by a nurse who is not employed

by a hospital or a physician, as well as expert testimony based on those test results, be suppressed. Finally, defendant argues that the admission of the blood-alcohol test results and testimony concerning the results was so damaging that it cannot constitute harmless error.

Because we believe that Section 66–8–103 does not require that a registered nurse or licensed professional nurse be employed by a hospital or physician as a prerequisite to the admissibility of blood test evidence, we do not discuss defendant's remaining two contentions.

The relevant portion of Section 66–8–103 provides: "Only a physician, licensed professional or practical nurse or laboratory technician or technologist employed by a hospital or physician shall withdraw blood from any person in the performance of a blood-alcohol test." Defendant's argument, similar to that advanced and rejected in *State v. Trujillo*, 85 N.M. 208, 510 P.2d 1079 (Ct.App.1973), is that the comma separates classes, or members of a class, and therefore the placement of the comma between the word "physician" and all the other listed occupations, together with the use of "or" between the other occupations, indicates a legislative intent to group all the occupations listed after "physician" into one class commonly subject to the employment requirement. Defendant further argues that due to the penal implications involved in the use of blood-alcohol testing, strict construction of Section 66–8–103 is required. Finally, defendant argues that the requirement for independent employment by a hospital or physician ensures the reliability of the blood-alcohol test. We disagree. The requirement of employment by a hospital or physician applies only to "technologists."

We have previously acknowledged that the cited language in Section 66–8–103 is ambiguous. *See State v. Trujillo*. In *Trujillo*, we ascertained the legislative intent of the statute by applying rules of construction. Statutes are to be read and understood primarily according to their grammatical sense, unless it is apparent that the author intended something different. *Aet-*

*na Finance Co. v. Gutierrez,* 96 N.M. 538, 632 P.2d 1176 (1981); *In re Goldsworthy's Estate,* 45 N.M. 406, 115 P.2d 627 (1941).

Although use of a comma after "physician" and the failure to use a comma between the other occupations listed in Section 66–8–103 may support the inference that the other occupations are grouped together, defendant's conclusion that all members of the group are subject to the employment condition does not follow from that grouping alone. In *Trujillo,* we characterized the same argument as an "expansive reading of the statute" which required adding words which were not part of the statute as enacted. Nonetheless, while defendant's grammatical argument may, at first glance, seem to have merit, there is another rule of statutory construction which we believe is applicable. It is the "last antecedent doctrine." *See In re Goldsworthy's Estate.* The doctrine provides that relative and qualifying words, phrases and clauses are to be applied to the words or phrase immediately preceding, and are not to be construed as extending to or including others more remote. *Id.* Here, the qualifying words are "employed by a hospital or physician." We apply that phrase to the preceding term "technologist" but not to the more remote terms. *See id.*

Pursuant to the doctrine of the last antecedent, the grammatical sense of the language in Section 66–8–103 would be that the employment condition does not apply to a licensed professional nurse. In the absence of a showing that something different was intended by the legislature, we believe that this is how the statute should be read and understood.

In *Trujillo,* we settled on a construction of the statute that would accomplish the legislative purpose of deterring drunk drivers and aid in discovering and removing the intoxicated driver from the highways. The construction urged upon us in *Trujillo* would have thwarted that salutary, and indeed necessary, legislative purpose. So too, here, the construction urged by defendant would significantly and unnecessarily limit the classes of individuals who could assist in furthering the statute's legislative purpose.

Henderson is a licensed registered nurse. He obtained an associate degree in nursing and has successfully completed competency and licensing examinations administered by the State of New Mexico. A registered nurse is one who practices professional nursing, and whose name is listed in the register of licensed registered nurses maintained by the state board of nursing. NMSA 1978, § 61–3–3(C) (Repl.1986). Section 61–3–3(A) defines professional nursing as:

[T]he performance of any act in which substantial knowledge derived from the biological, physical and behavioral sciences is applied:

(1) to the care, counsel and health teaching of persons who are either experiencing changes in the normal health processes or who require assistance in the maintenance of health, in the management of illness, injury or infirmity or in the achievement of a dignified death; or

(2) to the administration of medications and treatments as prescribed by a person authorized in this state to prescribe such medications and treatments.

Before one can qualify for licensure as a professional nurse, there is a graduation requirement from a four-year high school course of study or its equivalent, the graduation from an approved school of nursing, and the successful completion of the national licensing examination for registered nurses. NMSA 1978, §§ 61–3–13; 61–3–14 (Repl.1986). New Mexico does not impose greater experience, educational qualifications or skill requirements on professional nurses who are employed by physicians or hospitals, as opposed to those professional nurses who are not. The requirements to be a licensed professional nurse or registered nurse are sufficiently rigorous to fulfill the purpose of Section 66–8–103, that is, the safety of the subject and the reliability of the sample. *See Steere Tank Lines, Inc. v. Rogers,* 91 N.M. 768, 581 P.2d 456 (1978).

Our statutory interpretation is consistent with our holding in *Trujillo*. Moreover, in furthering the purpose of the Implied Consent Act, *see* NMSA 1978, Section 66–8–105 to –112 (Repl.Pamp.1987), to deter drunk driving and to aid in discovering and removing intoxicated drivers from the highways, a construction of the statute requiring that licensed professional nurses be employed by a physician or hospital would needlessly impose burdens on the discovery and removal of the intoxicated driver and, thus, thwart the legislative policy.

Citing *State v. Garcia*, 91 N.M. 664, 579 P.2d 790 (1978), defendant argues that the penal implications of Section 66–8–110 support a strict construction of Section 66–8–103. Defendant's reliance on *Garcia*, however, is misplaced. Defendant argues for strict construction of Section 66–8–103, not Section 66–8–110. The purpose behind a penal statute is to punish an offense against the state. *See Denison v. Tocker*, 55 N.M. 184, 229 P.2d 285 (1951). This is not the purpose of Section 66–8–103. *See State v. Trujillo*. Accordingly, Section 66–8–103 is not a penal statute.

Defendant's last argument is that the withdrawal of a blood sample by a registered nurse employed by a hospital or physician, as opposed to Henderson, who was under contract to the police department, will avoid the threat or suggestion of a personal interest in obtaining a favorable sample. We are not persuaded that this is a valid reason for adopting defendant's statutory interpretation. Moreover, this argument goes to the weight the fact finder should give the evidence, and not to its admissibility. *See State v. Copeland*, 105 N.M. 27, 727 P.2d 1342 (Ct.App.1986).

In conclusion, we hold that Section 66–8–103 does not require a licensed professional nurse or registered nurse to be employed by a hospital or physician in order to withdraw blood for blood-alcohol tests. Accordingly, we affirm the trial court's ruling on this point.

ISSUE 2 (Denial of right to an impartial jury.)

Defendant contends that his right to an impartial jury was denied by the trial court's refusal to strike a particular juror for cause. Juror Eberle (Eberle), who was originally selected as an alternate juror, became a deliberating juror during the course of the trial. Defendant argues that her view on the use of alcohol denied him the right to an impartial jury.

During voir dire, Eberle stated that she believed alcohol was the cause of many problems, that she was a member of Mothers Against Drunk Drivers (MADD) and that, years before, her own mother had belonged to the Christian Temperance Union. Eberle revealed that during her childhood she signed a pledge that she would never drink nor smoke and she had kept that promise. She stated that although she hated liquor, she had only compassion for those taken over by alcohol. Based on her responses, defense counsel inquired whether her views on alcohol or membership in MADD would make it difficult for her to remain neutral in judging the facts of the case. Eberle denied it would. She indicated that although she considered drinking a sin, her personal beliefs would not interfere with the facts if she really "weighed them well." Similarly, when asked if her membership in MADD would cause her to believe that because drinking was involved it was just "too much" and that she would have a "commitment," Eberle did not agree. She responded: "Well, as I said before, I hate liquor, but I have compassion for the person consumed by it." Based on Eberle's responses, the court denied defendant's strike for cause.

An accused is entitled to a trial by a fair and impartial jury. N.M. Const. art. II, § 14. An impartial jury means a jury where each and every one of the twelve is totally free from any partiality whatsoever. *State v. Dobbs*, 100 N.M. 60, 665 P.2d 1151 (Ct.App.1983). The trial court, however, has a great deal of discretion in dismissing a juror for cause, and its decision will not be disturbed absent a manifest error or clear abuse of that discretion. *State v. Martinez*, 95 N.M. 445, 623 P.2d 565 (1981), *overruled on other grounds, Fuson v. State*, 105 N.M. 632, 735 P.2d 1138 (1987). The burden of establishing partiality is

upon the party making the claim. *State v. Baca*, 99 N.M. 754, 664 P.2d 360 (1983).

■ In support of his argument that he was denied the right to an impartial jury, defendant relies on *State v. Sims*, 51 N.M. 467, 188 P.2d 177 (1947) and *Alvarez v. State*, 92 N.M. 44, 582 P.2d 816 (1978). Neither *Sims* nor *Alvarez*, however, support defendant's claim. In *Sims*, the prospective juror specifically stated that his bias or prejudice would cause him to find against the defendant, but then under skillful questioning by the trial court and the prosecutor, the juror declared he would return a verdict in accordance with the law and the evidence. In the present case, Eberle only indicated her aversion to alcohol·and her view that it caused many problems. She never stated, as did the juror in *Sims*, that she would find against defendant or that she believed that someone accused of a crime probably committed that crime if they had been using alcohol. Moreover, here, as opposed to *Sims*, it was defense counsel who "rehabilitated" Eberle when, in response to defense counsel's question, she denied any inability to be fair.

In *Alvarez*, defendant's jury included some jurors who had previously reached a guilty verdict in a different case based on the testimony of the same prosecution witness who would be called in *Alvarez*. The witness was the sole witness to the alleged sale of heroin and the state's case hinged on his testimony. The supreme court determined that those jurors should have been excused for cause: "The jurors, having sustained the credibility of the witness once before should not be allowed to overcome the implied bias in this situation by avowals of impartiality given in response to leading questions by the trial court and the prosecutor. * * * [T]hese jurors cannot be judges of their own impartiality." *Id.* 92 N.M. at 46, 582 P.2d at 818 (citing *Temple v. State*, 15 Okl.Cr. 176, 175 P. 733 (1918)).

The trial court determined that by reaching a verdict of guilty in the previous case, the jurors had passed on the credibility of the state's sole witness and demonstrated a bias in favor of the state. There is no such similar showing here.. Once Eberle indicated that she could be impartial, defendant made no further inquiry. Under the circumstances, defendant did not sustain his burden in demonstrating Eberle's partiality. *See State v. Baca; cf. State v. Dobbs* (effort to elicit more information than appears in the record should have been made where jurors were questioned about their ability to be impartial and counsel made no further inquiry after their responses).

Because defendant has not shown that Eberle was partial, and for the other reasons stated above, we hold the trial court did not abuse its discretion in refusing to strike Eberle for cause. *See State v. Baca; State v. Martinez.* Accordingly, defendant was not denied his right to an impartial jury. *See State v. Dobbs.*

ISSUE 3 (DWI conviction precluded.)

■ Defendant was convicted of both vehicular homicide and DWI. He contends that he could not be convicted of DWI under the facts of this case because DWI was a lesser included offense of vehicular homicide committed by DWI. Defendant asserts that a conviction for the higher offense bars a simultaneous conviction, under double jeopardy, of the lesser. Accordingly, he argues that his DWI conviction should be stricken and the six-month sentence vacated. We disagree.

Defendant's argument is based on an erroneous belief that the lesser included offense concept of double jeopardy precludes a simultaneous conviction for the lesser included offense. A conviction or acquittal of a lesser offense necessarily included in a greater offense bars a subsequent prosecution for the greater offense. *State v. Sandoval*, 90 N.M. 260, 561 P.2d 1353 (Ct.App.1977). Thus, the lesser included offense concept protects against retrial. *See id.*

Merger is an aspect of double jeopardy; it is concerned with whether more than one offense has occurred, and is applied to prevent a person from being punished twice for the same offense. *State v. McAfee*, 78 N.M. 108, 428 P.2d 647 (1967); *State v. Maes*, 100 N.M. 78, 665 P.2d 1169 (Ct.App. 1983). The doctrine of merger is applicable

here. Under the concept of merger, defendant can properly be *convicted* of both the lesser and greater offenses but can only be *punished* for one of those offenses. *See State v. Quintana*, 69 N.M. 51, 364 P.2d 120 (1961); *State v. Maes*. The sentence to be vacated is that imposed for the lesser offense because it is that offense which merges with the greater offense. *State v. Jacobs*, 102 N.M. 801, 701 P.2d 400 (Ct.App.1985). Accordingly, defendant's DWI offense merges with his vehicular homicide offense, and defendant's six month sentence for the DWI conviction must be vacated. *See id.*

ISSUE 4 (Merger of reckless driving and vehicular homicide.)

Following his convictions, defendant was sentenced to imprisonment for three years on the vehicular homicide conviction, three years on the great bodily harm conviction, six months on the driving while under the influence conviction, and ninety days on the reckless driving conviction, all sentences to run consecutively. The trial court suspended three years and nine months of the total sentence, ordering probation for that period of suspension.

Defendant argues that the acts constituting reckless driving—driving carelessly and heedlessly in willful disregard of the rights or safety of others, without due caution, and at a speed or in a manner so as to endanger or be likely to endanger any person according to Section 66–8–113(A), are necessarily the same acts to be proven for the conviction of vehicular homicide by driving under the influence of alcohol. Specifically, he argues, recklessness was the act of driving under the influence. Defendant argues that other evidence of his driving under the influence is insufficient to support the conviction of vehicular homicide. *See State v. Sisneros*, 42 N.M. 500, 82 P.2d 274 (1938). Accordingly, defendant argues that the sentence for reckless driving should be vacated.

The double jeopardy concept of "merger of offenses" requires that one offense necessarily involve the other. *State v. Jacobs*. A necessarily included offense does not have any element not included in the great-

er offense so that it is impossible to commit the greater offense without *necessarily* committing the lesser included offense. *Id.* A comparison of the elements of vehicular homicide by DWI and reckless driving, however, shows that all of the elements of the reckless driving offense are not necessarily included in the offense of vehicular homicide by DWI. *See* § 66–8–113(A). The state concedes on appeal that defendant's DWI conviction under count III must be vacated and has merged.

In determining necessarily included offenses, however, we no longer consider the statutory elements of the offenses in a vacuum. *State v. Brecheisen*, 101 N.M. 38, 677 P.2d 1074 (Ct.App.1984). Instead, we regard the offenses in light of the facts before us. *See State v. DeMary*, 99 N.M. 177, 655 P.2d 1021 (1982); *State v. Jacobs*.

■ Here, there was evidence that defendant was the driver of the truck and that he ran a stop sign. Further, defendant smelled of alcohol, had slurred speech, swayed back and forth while on a hospital bed, and admitted to drinking at least two bourbons with beer chasers prior to the accident. Defendant more importantly, had a .16 percent blood-alcohol level. This evidence is sufficient to convict defendant of DWI. *See City of Portales v. Shiplett*, 67 N.M. 308, 355 P.2d 126 (1960).

While evidence of intoxication might bear upon the question of whether a defendant is guilty of reckless driving, it does not necessarily prove it. Intoxication is but one circumstance to be considered by the fact finder in deciding the issue. *See State v. Sisneros*. There was testimony in this case to the effect that defendant ran a stop sign prior to the collision. This fact, along with the evidence of intoxication, would allow a fact finder to reasonably find defendant guilty of reckless driving. *Id.; cf. State v. Myers*, 88 N.M. 16, 536 P.2d 280 (Ct.App.1975) (circumstances of intoxication attending running a red light might reasonably lead jury to a finding of recklessness). Here, however, defendant was convicted of vehicular homicide while driving under the influence of intoxicating liquor, and not while driving recklessly.

Hence, given the facts of this particular case, defendant's conviction of reckless driving is not *necessarily* included in his conviction of vehicular homicide while driving under the influence. Accordingly, there is no merger of the two convictions. *See State v. Jacobs.*

CONCLUSION

For these reasons, we affirm all four of defendant's convictions; however, defendant's sentence for the DWI conviction must be vacated. Accordingly, we remand to the trial court to vacate defendant's six month DWI sentence.

IT IS SO ORDERED.

DONNELLY, C.J., and MINZNER, J., concur.