**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**December 13, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

GREGORY LADUE,

    Defendant-Appellant.

No. 06-2108

(D.C. No. CR-05-375-JH)
(D. New Mexico)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE, McCONNELL,** and **GORSUCH**, Circuit Judges.

Defendant Gregory Ladue appeals from his conviction for involuntary manslaughter in Indian Country, in violation of 18 U.S.C. § 1112 and 1152. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

I.

On Tuesday, November 2, 2004, Ladue, who was then employed as an insurance adjuster, took an early morning flight from his home in Phoenix, Arizona, to

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 (eff. Dec. 1, 2006) and 10th Cir. R. 32.1 (eff. Jan. 1, 2007).

Albuquerque, New Mexico. Ladue's plan was to spend the day adjusting insurance claims throughout New Mexico, and then catch an evening flight home. Ladue rented a Nissan Sentra at the Albuquerque airport, and drove from Albuquerque to Thoreau and Prewitt, New Mexico, to adjust two insurance claims. From there, he began driving northward on New Mexico Highway 371 in order to adjust a claim in Farmington, New Mexico.

Highway 371 is a two-lane road that, for much of its length, contains numerous hills, curves, and rough sections. Three drivers, Cody Drake, Yolanda Joe and Kim Harris, observed Ladue, in the Sentra, pass them on different sections of Highway 371. All three estimated that Ladue was driving between 80 and 100 miles per hour when he passed them, and that after passing them, Ladue continued driving at a high rate of speed rather than slowing down. Further, two of the three drivers indicated that Ladue failed to use his turn signals either before or after passing them (to indicate he was exiting and then returning to the driving lane). One of the drivers, Kim Harris, reported that Ladue, as he passed her, looked back at her rather than forward at the highway. Harris also reported that Ladue, after passing her, appeared to be looking from side to side, rather than forward at the highway. According to Harris, she told her husband, who was riding in the car with her, that Ladue "was going to have an accident or he was going to kill someone or kill himself." App. at 214.

After passing Cody Drake on a hilly and curvy section of Highway 371, Ladue entered a flat section of Highway 371 that, under clear weather conditions such as existed

on the morning of November 2, 2004, afforded a clear and unobstructed view of the highway in the distance. According to Ladue, he remembers observing a car in the distance parked on the side of the highway. Ladue, while still driving, then looked down and away from the highway for approximately twenty to thirty seconds. Upon returning his gaze to the highway, Ladue noticed that the car he had previously observed was now on the highway and traveling at highway speed directly in front of him. Ladue slammed on his brakes, began skidding, and then hit the rear bumper of the car in front of him. That car, which was driven by Leonard Begay, began spinning clockwise, drove off the highway to the east, and overturned two-and-one-half times. Begay, who was not wearing a seat belt, was ejected from, and ultimately crushed by, his car. Begay subsequently died from multiple blunt force injuries to his head and chest.

Following the accident, Ladue was transported by ambulance to the Farmington Regional Medical Center. Rory Truby, an officer with the San Juan County Sheriff's Office, visited Ladue in the emergency room and obtained Ladue's consent for a blood draw. Ladue's blood was subsequently drawn at approximately 2:15 or 2:30 p.m. that day, or approximately two-and-one-quarter to two-and-one-half hours after the accident. Analysis of the blood revealed the presence of methamphetamine at a level of 0.12 milligrams per liter.

On February 25, 2005, a federal grand jury indicted Ladue on one count of involuntary manslaughter in Indian Country, in violation of 18 U.S.C. §§ 1112 and 1152. Ladue was arrested the following day, February 26, 2005, in Phoenix, Arizona. At the

-3-

time of his arrest, Ladue was found to be in possession of a methamphetamine pipe and a personal use quantity of methamphetamine. Ladue was charged in Arizona state court with possession of methamphetamine and drug paraphernalia, and ultimately pled guilty to the paraphernalia charge.

On July 5, 2005, Ladue filed a motion in limine asking the federal district court to prohibit the government from admitting at trial evidence of the fact that he was in possession of drugs and drug paraphernalia at the time of his arrest. The district court denied Ladue's motion.

On October 12, 2005, a superseding indictment was returned against Ladue. Id. at 21. The superseding indictment, which was substantially similar to the original indictment, specifically alleged as follows:

> On or about December 2, 2004, in Indian Country, in the State and District of New Mexico, the defendant, GREGORY LADUE, a non-Indian, unlawfully killed Leonard Begay, an Indian, while in the commission of an unlawful act not amounting to a felony, that is while operating a motor vehicle while under the influence of drugs, contrary to N.M. Stat. Ann. § 66-8-102 (1978) and reckless driving contrary to N.M. Stat. Ann. § 66-8-113 (1978), and the defendant, GREGORY LADUE, operated a motor vehicle without due caution and circumspection and knew and should have known that his conduct imperiled the lives of others.

Id.

The case proceeded to trial on November 7, 2005. At the close of the government's evidence, Ladue moved for judgment of acquittal. The district court reserved ruling on the motion. At the conclusion of all the evidence, the jury found Ladue not guilty of involuntary manslaughter as a result of driving under the influence of

-4-

methamphetamine, but guilty of involuntary manslaughter as a result of reckless driving. The district court denied Ladue's motion for judgment of acquittal. Ladue filed a motion for reconsideration of the district court's order denying his motion for judgment of acquittal. The district court denied that motion and sentenced Ladue to a term of imprisonment of thirty-three months.

## II.

*Was the evidence presented at trial sufficient to support Ladue's conviction for reckless driving resulting in a homicide?*

On appeal, Ladue contends that the evidence presented at trial was insufficient to allow the jury to find that he engaged in reckless driving. Although Ladue concedes he "was inattentive while possibly speeding," he argues that there was no evidence that he exhibited a "wanton disregard for human life . . . ." Aplt. Br. at 15. "We review claims of insufficient evidence de novo." United States v. Rockey, 449 F.3d 1099, 1102 (10th Cir. 2006). "Evidence is sufficient to support a conviction if, viewing the evidence in the light most favorable to the government, a reasonable jury could have found the defendant guilty beyond a reasonable doubt." Id. (internal quotation marks omitted).

Ladue was charged with, and convicted of, involuntary manslaughter in violation of 18 U.S.C. §§ 1112 (manslaughter) and 1152 (noting that the general laws of the United States shall extend to Indian Country). Section 1112 provides, in pertinent part, that involuntary manslaughter "is the unlawful killing of a human being without malice" while "[i]n the commission of an unlawful act not amounting to a felony, or in the commission

in an unlawful manner, or without due caution and circumspection, of a lawful act which might produce death." 18 U.S.C. § 1112(a). The superseding indictment alleged three theories of liability: (1) that Ladue killed Begay "while in the commission of an unlawful act not amounting to a felony, that is while operating a motor vehicle while under the influence of drugs, contrary to N.M. Stat. Ann. § 66-8-102 (1978)"; (2) that Ladue killed Begay "while in the commission of an unlawful act not amounting to a felony, that is while . . . reckless driving contrary to N.M. Stat. Ann. § 66-8-113 (1978)"; and (3) that Ladue killed Begay while "operat[ing] a motor vehicle without due caution and circumspection and knew and should have known that his conduct imperiled the lives of others." The district court, however, instructed the jury only on the first two theories. In turn, the jury rejected the first theory, but accepted the second, i.e., it found that Ladue killed Begay while engaged in reckless driving contrary to New Mexico Statute § 66-8-113.

To convict Ladue under the reckless driving theory, the jury had to find that Begay was killed while Ladue was driving his rental vehicle "carelessly and heedlessly in willful or wanton disregard of the rights or safety of others and without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property . . . ." N. M. Stat. Ann. § 66-8-113.A (2004). Our task, given Ladue's arguments on appeal, is to determine whether the evidence presented at trial was sufficient to support such a finding.

At trial, three government witnesses testified that, prior to the accident, they observed Ladue driving his rental car at speeds of between 80 and 100 miles per hour on dangerous sections of Highway 371. One of those witnesses also testified that she observed Ladue repeatedly looking from side to side, and at one point back at her as he passed her, rather than forward in the direction he was driving. The government's evidence further established that, although the area of the highway where the accident occurred was straight and wide open, and that the conditions that day were sunny and dry, Ladue's car struck the rear bumper of Begay's car while Begay was traveling at or close to highway speed. The government's accident reconstruction expert, Jackie Budd, opined that Ladue's vehicle was traveling at a rate of approximately 88 to 96 miles per hour, in a 65 mile-per-hour zone, at the time Ladue began braking to avoid Begay's car. Budd further opined that, at the moment of impact, Ladue's vehicle was traveling approximately 84 to 92 miles per hour. During his own testimony, Ladue admitted on cross-examination that he was looking down inside his car, and thus not at the highway, for approximately 20 to 30 seconds immediately prior to the accident. Finally, it was uncontroverted that Ladue had methamphetamine in his system and was observed both before and after the accident exhibiting symptoms that are known to result from methamphetamine use.[1]

---

[1] According to the toxicologist, methamphetamine ingestion can, among other things, (a) negatively impact a person's motor skills and vision, (b) make them excitable, anxious, agitated, and/or paranoid, (c) produce rapid speech, (d) cause dilation of the person's pupils, and (e) cause them to engage in risk-taking while driving. App. at 347-49, 362.

Considered together, we conclude this evidence was more than sufficient to allow the jury to find that Ladue engaged in reckless driving in violation of § 66-8-113. In particular, the jury reasonably could have found that Ladue knew or should have known that, by driving well in excess of the speed limit for an extended period of time on a highway with which he was not particularly familiar, while simultaneously looking away from the highway for significant periods of time, and while potentially suffering from the lingering effects of consuming methamphetamine, he was creating a substantial and foreseeable risk of harm to others. See State v. Sandoval, 539 P.2d 1029, 1030 (N. M. Ct. App. 1975) ("In our opinion, any evidence of drinking is relevant as a circumstance for the jury to consider on the issue of reckless driving" because such evidence has "a tendency to make the existence of carelessness or lack of due caution more probable than it would be without the evidence"); State v. Platter, 347 P.2d 166, 168 (N. M. 1959) (holding that testimony of police officer who believed that defendant was intoxicated was relevant and admissible "as bearing on the issue of reckless driving, to prove all of the circumstances at the time of the alleged criminal act, including [defendant]'s condition, movements, and conduct"). Further, the jury reasonably could have found that Ladue willfully disregarded that risk and was wholly indifferent to the consequences of his conduct. See State v. Wiberg, 754 P.2d 529, 535 (N. M. Ct. App. 1988) (concluding that "testimony . . . to the effect that defendant ran a stop sign prior to the collision," "along with . . . evidence of intoxication, would allow a fact finder to reasonably find defendant guilty of reckless driving"); Sandoval, 539 P.2d at 1031 (concluding that evidence, which

-8-

indicated defendant was driving on a heavily trafficked street in excess of the speed limit and in a "hot-rod" fashion, after having been seen drinking alcohol, was sufficient for jury to find that defendant acted in wanton disregard of the rights or safety of others); State v. Richerson, 535 P.2d 644, 649-50 (N. M. Ct. App. 1975) (concluding that evidence, which indicated defendant was driving on the wrong side of the road at a high and illegal rate of speed in a residential neighborhood before causing fatal accident, was sufficient to allow jury to find that defendant was guilty of reckless driving); Platter, 347 P.2d at 168 (concluding that evidence, which established that "defendant made a left-hand turn on a sharp curve on the wrong side, and that he was later wandering back and forth across an ordinarily heavily traveled highway approaching another sharp curve," was sufficient to support conviction for reckless driving).

> *Did the district court err in admitting evidence that Ladue possessed methamphetamine at the time of his arrest?*

Ladue next contends the district court erred in admitting evidence that, at the time of his arrest, he possessed drug paraphernalia and a "personal use quantity" of methamphetamine. According to Ladue, any possible relevance of this evidence was outweighed by its prejudicial effect. More specifically, Ladue argues that "evidence of [his] subsequent meth possession had no relevance to any issue regarding intent, mistake or accident" because "the government presented *no* evidence that he was meth impaired on November 2, 2004." Aplt. Br. at 25 (emphasis in original).

We conclude it is unnecessary to address this issue in detail because, even assuming the challenged evidence was improperly admitted, the record clearly establishes that the error was harmless. As we have already discussed, there was substantial evidence of Ladue's guilt under the reckless driving theory. United States v. Hardwell, 80 F.3d 1471, 1490-91 (10th Cir. 1996) (concluding that admission of challenged Rule 404(b) evidence was harmless because evidence of the defendant's guilt was overwhelming). Further, the jury simultaneously acquitted Ladue under the alternative theory that Begay's death occurred while Ladue was operating a motor vehicle under the influence of methamphetamine, indicating that the jury clearly took into account the limiting instruction given by the district court prior to the admission of the challenged evidence.[2] United States v. Oberle, 136 F.3d 1414, 1419 (10th Cir. 1998) (concluding that erroneous

_____

[2] The district court gave the following limiting instruction:

> Ladies and gentlemen, you are going to hear evidence of an act of the defendant which may be similar to the acts charged in the indictment but which was committed on another occasion. You must not consider any of this evidence in deciding if the defendant committed the acts charged in the indictment, however, you may consider this evidence for other very limited purposes. If you find beyond a reasonable doubt from other evidence in this case that the defendant did commit the acts charged in the indictment, then you may consider the evidence of the similar act allegedly committed on another occasion to determine whether the defendant had a motive or the opportunity to commit the acts charged in the indictment, or whether the defendant committed the acts for which he is, for which he is on trial, by accident or mistake. These are the limited purposes for which any evidence of any similar act may be considered.

App. at 441

admission of purported Rule 404(b) evidence was harmless "in light of the substantial evidence against [the defendant] and the limiting instruction given to the jury"). Thus, there is nothing in the record to suggest that the district court's admission of the challenged evidence, even if improper, impacted the jury's finding of guilt.

*Amendment of the superseding indictment*

In his final issue on appeal, Ladue contends the district court erred by amending the indictment on the day the trial commenced in order to reflect that the involuntary manslaughter occurred on November 2, rather than December 2, 2004, as stated in the indictment. Ladue argues that this amendment was per se prejudicial and "his conviction [should] be reversed because he was forced to endure a trial on a charge not brought by a grand jury." Aplt. Br. at 39.

According to the record on appeal, there was no discussion of amending the indictment on the first day of trial, as alleged by Ladue. Further, there is no indication in the record that the indictment was formally amended. There was, however, some discussion between the court and the parties on the morning of the third day of trial (November 9, 2005) regarding the date of the crime alleged in the indictment. App. at 415-19. At that point, the district court stated it "ha[d]n't seen anything that suggest[ed] that there was any lack of notice to [Ladue] about what he was charged with, or lack of notice that would interfere with his preparation of his defense." Id. at 419. The following day, at the conclusion of all the evidence, the district court instructed the jury that the indictment charged that the crime occurred "on or about November 2nd, 2004 . . . ." Id.

at 590. The district court also instructed the jury that although the "indictment charge[d] that the offense was committed on or about a certain date, [t]he government d[id] not have to prove that the crime was committed on that exact date so long as the government prove[d] beyond a reasonable doubt that [Ladue] committed the crime on a date reasonably near the date alleged." Id. at 592.

In light of these facts, the question effectively posed by Ladue is whether the district court's actions amounted to an impermissible constructive amendment of the indictment. "A constructive amendment to an indictment occurs when" the government, the district court, or both, "broadens the possible bases for conviction beyond those presented by the grand jury." United States v. Mitov, 460 F.3d 901, 906 (7th Cir. 2006) (internal quotation marks omitted). "Whether [a] change allowed at trial amounted to an impermissible constructive amendment is a question of law that we review *de novo*." Id.

We conclude that the district court's actions did not amount to an impermissible constructive amendment of the indictment. "For a change in [an] indictment to rise to the level of a constructive amendment, it must establish an offense different from, or in addition to, those originally charged." Id. Accordingly, the focus is on whether the change "affect[ed] elements of the crime" charged. Id.; see United States v. Dupre, 462 F.3d 131, 140 (2d Cir. 2006) (noting that a constructive amendment occurs when either the proof at trial or the jury instructions so altered an essential element of the charge that it is uncertain whether the defendant was convicted of conduct that was the subject of the grand jury's indictment); United States v. Alexander, 447 F.3d 1290, 1298 (10th Cir.

-12-

2002) ("[A] constructive amendment occurs when the substance of the indictment is effectively altered, but not when nonessential factual allegations have been added or deleted[.]"). In this case, the date of the crime, though alleged in the original and superseding indictments, was not an essential element of the charged offense. See 18 U.S.C. § 1112 (no mention of date in manslaughter statute). Moreover, if an indictment is worded broadly to state that the charged crime occurred "on or about" a certain date, "the defendant is deemed to be on notice that the charge is not limited to a specific date." Mitov, 460 F.3d at 908. That was precisely the situation here, because the indictment alleged that the death of Begay occurred "on or about December 2, 2004." Based upon these facts, it is clear that the district court did not err in instructing the jury that the charged crime occurred on or about November 2, 2004 (or instructing the jury that the precise date was immaterial). See id. (reaching same conclusion under similar circumstances). Stated differently, it is clear that Ladue was not deprived of his constitutional right to be tried only on charges presented in an indictment returned by a grand jury. See United States v. Young, 862 F.2d 815, 818-19 (10th Cir. 1988) ("even if the date allegation contained in the indictment is incorrect, it will not bar conviction" if "time is not an essential element of the offense"; "even though there be a defect in the allegation as to time, it is one of form only") (internal quotation marks omitted).

    AFFIRMED.

                                    Entered for the Court

                                    Mary Beck Briscoe
                                    Circuit Judge

-13-