**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**Opinion Number: 2022-NMSC-008**

**Filing Date: December 16, 2021**

**No. S-1-SC-37722**

**STATE OF NEW MEXICO,**

      Plaintiff-Respondent,

v.

**BRIAN ADAMS,**

      Defendant-Petitioner.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Daylene Marsh, District Judge**

Released for Publication March 1, 2022.

Bennett J. Baur, Chief Public Defender
Caitlin C.M. Smith, Assistant Appellate Defender
John Charles Bennett, Assistant Appellate Defender
Santa Fe, NM

for Petitioner

Hector H. Balderas, Attorney General
John Kloss, Assistant Attorney General
Santa Fe, NM

for Respondent

**OPINION**

**VIGIL, Chief Justice.**

**{1}** This case is one of six cases arising under very similar fact patterns.[1] In each case, an "emergency department technician," also licensed as an emergency medical technician (EMT), performed a blood draw test at San Juan Regional Medical Center in Farmington for the purpose of a DWI investigation. The defendants in these cases

---

[1] The remaining five cases have been held in abeyance pending the outcome of this case. *State v. Garcia*, S-1-SC-37719; *State v. Riley*, S-1-SC-37721; *State v. Talk*, S-1-SC-37727; *State v. Harrison*, S-1-SC-37774; *State v. Jaramillo*, S-1-SC-37775.

argue that "emergency department technicians" are not qualified to draw blood under the Implied Consent Act, NMSA 1978, §§ 66-8-105 to -112 (1978, as amended through 2019). Thus, this case presents an issue of statutory construction. Specifically, whether an emergency department technician, licensed as an EMT, with training and experience in drawing blood is authorized to perform legal blood draw tests as a "laboratory technician" under NMSA 1978, Section 66-8-103 (1978), which states, "[o]nly a physician, licensed professional or practical nurse or laboratory technician or technologist employed by a hospital or physician shall withdraw blood from any person in the performance of a blood-alcohol test."[2] As explained herein, we conclude that such medical professionals are qualified to draw blood under the statute so long as they were employed to do so by a hospital or physician and have adequate training and experience.

## I. BACKGROUND

{2} After receiving a report of a drunk driver, a Farmington police officer was dispatched to a local gas station. Upon arriving at the gas station, the police officer found Defendant inflating his car tires. The officer noticed that Defendant's legs were shaking, his eyes were bloodshot, and his speech was slurred. The officer conducted a number of field sobriety tests with Defendant. In performing the tests, Defendant failed to follow directions, swayed back and forth, and struggled to maintain balance. Defendant told the officer that he drank whiskey and took Xanax and Suboxone pills earlier that day.

{3} The officer arrested Defendant for DWI. Pursuant to the Implied Consent Act,[3] the officer then drove Defendant to the San Juan Regional Medical Center in Farmington for a blood test to determine the drug and alcohol content of Defendant's blood. When they arrived, the officer unsealed a Scientific Laboratory Division (SLD) blood draw kit in the presence of emergency department technician and licensed EMT Danica Atwood. He then requested that Atwood draw Defendant's blood using the SLD blood draw kit. An SLD-approved blood draw kit includes

> everything that is needed for a blood draw to ensure continuity and standardization, and to avoid compromising the accuracy and integrity of blood samples. [It] contain[s] instructions, paperwork, an iodine cleaning

---

2The Administrative Code additionally states that "[t]he term laboratory technician shall include phlebotomists." 7.33.2.15 (A)(1) NMAC.

3The Implied Consent Act states that

[a]ny person who operates a motor vehicle within this state shall be deemed to have given consent, subject to the provisions of the Implied Consent Act . . . to chemical tests of his breath or blood or both . . . as determined by a law enforcement officer, or for the purpose of determining the drug or alcohol content of his blood if arrested for any offense arising out of the acts alleged to have been committed while the person was driving a motor vehicle while under the influence of an intoxicating liquor or drug.

Section 66-8-107(A).

pad, a needle with attached tube, and two gray-topped, sterile vacuum tubes containing sodium fluoride—a white powder preservative."

*State v. Garcia*, 2016-NMCA-044, ¶ 4, 370 P.3d 791. Defendant then signed the proper paperwork consenting to the procedure, and Atwood drew two vials of blood. The officer placed the vials into the SLD blood draw kit and sealed it in front of Atwood. The officer then submitted Defendant's blood samples for testing by the SLD of the New Mexico Department of Health. The test results revealed that Defendant's blood was negative for alcohol but positive for marijuana-related metabolites, benzodiazepines, and synthetic opioids.

**{4}** The State charged Defendant with one count of DWI contrary to NMSA 1978, Section 66-8-102 (2016). In magistrate court, Defendant moved to suppress the blood test results on the basis that Atwood was not qualified to draw blood under Section 66-8-103. The magistrate judge denied Defendant's motion to suppress. Defendant pleaded no contest, reserving his right to appeal the magistrate court's decision.

**{5}** Defendant then appealed to the district court, which held an evidentiary hearing to determine the issue. After the hearing, the district court granted Defendant's motion to suppress the blood test results because it concluded that Atwood was not qualified to draw blood under the statute. The district court explained that it was bound by the New Mexico Court of Appeals holding in *Garcia*, 2016-NMCA-044, ¶ 20, "that a person's 'license as an EMT does not qualify her to draw blood to determine its alcohol or drug content under the Implied Consent Act.'"

**{6}** Following the district court's ruling, the State appealed the issue to the Court of Appeals. The Court of Appeals reversed the district court's order and held that the blood test should not have been excluded. *State v. Adams,* 2019-NMCA-043, ¶¶ 1, 29, 447 P.3d 1142. The Court of Appeals explained that *Garcia* stands for the proposition that an EMT license *alone* does not qualify an employee like Atwood to draw blood for legal blood tests. *Id.* ¶ 20. Here, however, the Court of Appeals clarified that Atwood was qualified as a laboratory technician under Section 66-8-103 because she held an EMT license in addition to having experience and training in drawing blood. *Id.* ¶¶ 21, 29. The Court of Appeals held "that an individual qualifies as a laboratory technician, despite her official title, if she has sufficient skills, training, and experience to assure a hospital or physician that she is qualified to perform blood draws in accordance with approved medical practice." *Id.* ¶ 28. Accordingly, the Court of Appeals concluded that even though "Atwood did not have the title 'laboratory technician,' or work in a laboratory," she was a laboratory technician under the statute because of her "assigned duties, skills, training, and experience." *Id.* ¶¶ *28, 29*

**{7}** Defendant appealed the Court of Appeals ruling, and we granted certiorari to resolve the issue of which medical professionals qualify to draw blood as a "laboratory technician" under Section 66-8-103. With this opinion, we affirm the Court of Appeals but write to clarify that, in order for a medical professional to qualify as a laboratory technician for the purposes of performing legal blood draws, the person must be

employed by a hospital or physician to perform blood draws, trained to perform legal blood draws, and have on-the-job experience in doing so.

## II.    DISCUSSION

**{8}**    We begin by addressing the statutory construction issue and then turn to the issue of whether the district court abused its discretion in suppressing the blood test results.

## A.    Statutory Construction

**{9}**    We must first determine the statutory interpretation of the words "laboratory technician" in Section 66-8-103. Statutory construction is a matter of law that is reviewed de novo. *State v. Almanzar*, 2014-NMSC-001, ¶ 9, 316 P.3d 183. In engaging in statutory construction, our "primary goal is to ascertain and give effect to the intent of the Legislature." *State v. Nick R.*, 2009-NMSC-050, ¶ 11, 147 N.M. 182, 218 P.3d 868.

**{10}**    In conducting a statutory construction analysis, we begin by considering the plain meaning of the statute. We "look to the plain language of the statute to determine if the statute can be enforced as written." *State v. Padilla*, 2008-NMSC-006, ¶ 7, 143 N.M. 310, 176 P.3d 299. When words are not otherwise defined in a statute, we "giv[e] those words their ordinary meaning absent clear and express legislative intention to the contrary." *State v. Johnson*, 2009-NMSC-049, ¶ 10, 147 N.M. 177, 218 P.3d 863 (internal quotation marks and citation omitted). To do so, we consult common dictionary definitions. *See State v. Boyse*, 2013-NMSC-024, ¶ 9, 303 P.3d 830. "A statute must be construed so that no part of the statute is rendered surplusage or superfluous." *Katz v. N.M. Dep't of Hum. Servs.*, 1981-NMSC-012, ¶ 18, 95 N.M. 530, 624 P.2d 39. "Unless ambiguity exists, this Court must adhere to the plain meaning of the language." *State v. Maestas*, 2007-NMSC-001, ¶ 14, 140 N.M. 836, 149 P.3d 933. "A statute is ambiguous when it can be understood by reasonably well-informed persons in two or more different senses." *Maestas v. Zager*, 2007-NMSC-003, ¶ 9, 141 N.M. 154, 152 P.3d 141 (internal quotation marks and citation omitted).

**{11}**    Section 66-8-103 requires that "[o]nly a physician, licensed professional or practical nurse or laboratory technician or technologist employed by a hospital or physician shall withdraw blood from any person in the performance of a blood-alcohol test." We must interpret the Legislature's intended definition of a "laboratory technician" as it is used in this statute. As the Court of Appeals correctly stated, "[t]here is no statutory or regulatory definition of 'laboratory technician'" and "New Mexico courts have not previously addressed the requirements for qualification as a laboratory technician under Section 66-8-103." *Adams*, 2019-NMCA-043, ¶¶ 26-27. Turning to dictionary definitions, the Court of Appeals noted that *Merriam-Webster's Collegiate Dictionary* defines a technician as "'one who has acquired the technique of an . . . area of specialization.' *Technician*, Merriam-Webster's Collegiate Dictionary (11th ed. 2003)." *Id*. ¶ 26 (omission in original). Finding no clear meaning from the plain language of the statute, the Court of Appeals proceeded to consider the legislative purpose in its construal of the term "laboratory technician." *See id.* ¶ 28.

## 1.     The plain meaning of Section 66-8-103 is ambiguous

**{12}**    Defendant argues that the Court of Appeals should have adhered more closely to the plain meaning of the statute before consulting other sources of statutory interpretation. According to Defendant, the Court of Appeals improperly strayed from the plain meaning of the statute by holding that medical professionals without laboratory experience can be "laboratory technicians" under the statute. *See id.* ¶ 29. Citing to a number of sources defining "laboratory technician," Defendant insists that the ordinary definition of the term "laboratory technician" requires actual laboratory experience, a background in laboratory science, or laboratory skills beyond the skill of drawing blood itself. Defendant asserts that the use of the term "laboratory technician" in the statute means that the Legislature intended the employee drawing blood to have had laboratory experience. To hold otherwise, Defendant argues, would be to render the word "laboratory" superfluous.

**{13}**    The State, quoting *City of Eunice v. N.M. Tax'n & Revenue Dept.*, 2014-NMCA-085, ¶ 14, 331 P.3d 986, agrees with Defendant that "[i]n the absence of a statutory definition, [the Court] rel[ies] on a dictionary definition to determine the meaning of the language used." However, the State focuses on the word "technician," rather than "laboratory," emphasizing that, in order to be a technician, a person must have acquired a certain technique around an area of specialization. Specifically, the State cites literature from the Department of Labor, which says, "technicians and technologists perform tests and procedures that physicians and surgeons or other healthcare personnel order."

**{14}**    The State argues that Atwood meets this definition of a "technician" because she was trained and employed to perform specialized tasks for which she utilized technical processes and methods that involved the practical application of specified knowledge. For that reason, the State concludes Atwood was qualified to draw blood under the statute as a phlebotomist, a laboratory technician, or a technologist employed by a hospital. We note that Atwood herself refuted the contention that she was a phlebotomist and that the evidence does not support an inference that she was a technologist employed by the hospital. We therefore limit our analysis to the plain meaning of "laboratory technician."

**{15}**    We agree with the State that the term "laboratory technician" is ambiguous on its face. This term can be reasonably understood to have more than one meaning, as is evident from the parties' conflicting but reasonable interpretations of the word "technician." Because the Court of Appeals proceeded to address the legislative purpose of the statute, it must have similarly concluded that the plain language does not answer the question presented. Like the Court of Appeals, we turn to address the legislative purpose of the statute's requirement that a person qualified to perform a legal blood draw must be a "laboratory technician."

**2.     Allowing EMTs with adequate training and experience in drawing blood to perform legal blood draws is consistent with the legislative purpose of the statute**

**{16}**    Though looking at the plain language of the statute is the first step in statutory construction analysis, this Court has made clear that we "will not be bound by a literal interpretation of the words if such strict interpretation would defeat the intended object of the [L]egislature." *Padilla*, 2008-NMSC-006, ¶ 10 (internal quotation marks and citation omitted). If statutory language "is doubtful, ambiguous, or an adherence to the literal use of the words would lead to injustice, absurdity, or contradiction, the court should reject the plain meaning rule in favor of construing the statute according to its obvious spirit or reason." *Id.* ¶ 7 (internal quotation marks and citation omitted). "[L]egislative intent is [this Court's] touchstone when interpreting a statute." *Id.* ¶ 10.

**{17}**    Defendant argues that, by allowing EMTs with training and experience in drawing blood to perform legal blood draws, the Court of Appeals violated the Legislature's intent to authorize blood draws by only limited categories of qualified medical professionals. Defendant says that under Section 66-8-103, in order to be qualified to draw blood, a medical professional must fit under one of the five categories outlined in the statute regardless of how much training or experience the medical professional might have. An EMT, Defendant concludes, does not fall within any of the five enumerated categories.

**{18}**    In its opinion, the Court of Appeals stated, "an individual qualifies as a laboratory technician . . . if she has sufficient skills, training, and experience to assure a hospital or physician that she is qualified to perform blood draws in accordance with approved medical practice." *Adams*, 2019-NMCA-043, ¶ 28. Because the Legislature specifically listed which medical professionals are permitted to draw blood under the statute, Defendant challenges the deference of the Court of Appeals to the opinion of doctors and hospitals to determine who is qualified as a laboratory technician. Defendant asserts that such an interpretation results in the term "laboratory technician" no longer meaning a skilled analyst working in a laboratory, as the plain language indicates, but rather any person who draws blood in a hospital.

**{19}**    Defendant states that if the Legislature had wanted to defer to hospitals to make this decision, it could have so indicated in the statute, but it did not do that. In fact, Defendant thinks that the Legislature did the opposite and tried "to avoid a case-by-case determination about who may draw blood from any particular defendant." Defendant explains that this is demonstrated by the fact that the five categories laid out in Section 66-8-103 fit into two broader categories: (1) medical professionals who are highly educated, such as doctors and nurses, and (2) "laboratory personnel who do extensive work with blood draws and blood analysis." Defendant states that the Legislature could have added a catchall category but did not do so; therefore, the Court of Appeals should not have inserted one.

**{20}**    Defendant further argues, quoting *Garcia*, that the plain language of the statute reveals the legislative intent of the statute, which is "'to insure the safety and protection

of the person whose blood is drawn.'" *See Garcia*, 2016-NMCA-044, ¶ 24. Defendant asserts that the Legislature meant to protect patients from having blood drawn by people with inadequate training. Defendant argues that the distinction the Legislature drew to protect the safety of patients is one of credentials, not individual skill level.

**{21}** In response, the State asks us to extend our analysis beyond the plain meaning of the statutory language to interpret the statute in light of its legislative purpose. Quoting *State v. Wiberg*, 1988-NMCA-022, ¶ 13, 107 N.M. 152, 154 P.2d 529, the State argues that rather than focusing on the lack of an exact match between Atwood's job title and the categories listed in the statute, we should interpret the statute in a way that better "'accomplish[es] the legislative purpose of deterring drunk drivers and aid[s] in discovering and removing the intoxicated driver from the highways.'"

**{22}** We agree with the State that a strict plain language interpretation is not appropriate in this case. We must analyze the statute through the lens of the Legislature's intended purpose, which we conclude encompasses two goals: (1) to protect patients subject to a blood draw and (2) to ensure the collection of a reliable blood sample for use in DWI prosecutions. Contrary to Defendant's argument, requiring a laboratory technician to have explicit laboratory experience does not achieve these purposes. *See Wiberg*, 1988-NMCA-022, ¶ 14 (listing the purpose of Section 66-8-103 as safety of subject and reliability of sample). Experience working in a laboratory, in and of itself, does not guarantee that a particular medical professional has the necessary skills and qualifications to draw blood safely and reliably. Therefore, we decline to adopt a narrow interpretation of "laboratory technician" to refer to only those professionals who work in a laboratory. Such an interpretation would exclude medical professionals with extensive training and expertise in routinely drawing blood in a medical setting thus defeating the legislative purpose of the statute.

**{23}** We must construe Section 66-8-103 consistent with "its obvious spirit or reason." *Padilla*, 2008-NMSC-006, ¶ 7 (internal quotation marks and citation omitted). Analysis of prior Court of Appeals opinions indicates that the statute should be broadly interpreted to permit blood draws by qualified medical professionals, even if those professionals are not explicitly identified in the statute. This conclusion is consistent with previous decisions of the Court of Appeals, where that Court interpreted the statute to broaden, not narrow, the category of individuals authorized to draw blood. This analytical approach better meets the goal of the statute.

**{24}** In *State v. Trujillo*, the Court of Appeals addressed the issue whether a medical professional, trained and experienced in drawing blood but lacking a license, was authorized to draw blood as a "technologist" under the statute. 1973-NMCA-076, ¶ 15, 85 N.M. 208, 510 P.2d 1079. The Court of Appeals held that "the statute [wa]s ambiguous" as to whether "the Legislature intend[ed] that a technologist be licensed[.]" *Id*. ¶¶ 17-18. The Court then pursued "the legislative intent by applying rules of construction." *Id*. ¶ 17. Reasoning that because (1) the Court presumes that the Legislature knows the existing law, (2) the Court should not adopt statutory constructions that lead to absurd results, and (3) the Court should construe statutes

according to the purpose for which they were enacted, the Court held that the Legislature did not intend to require that a technologist be licensed. *Id.* ¶¶ 18-22.

**{25}** In reaching this conclusion, the Court declared the public policy underlying the statute. "One purpose is to deter driving while intoxicated. Another purpose is to aid in discovering and removing from the highways the intoxicated driver. . . . To hold that a technologist must be licensed when there are no provisions for a license, would defeat the purpose of discovering . . . the intoxicated driver." *Id.* ¶ 21 (omissions in original) (internal quotation marks and citation omitted).

**{26}** In *Wiberg*, the Court of Appeals considered whether a nurse who was not employed by a hospital or physician but by an Albuquerque Police Department contractor was qualified to draw blood for a blood-alcohol test under Section 66-8-103. 1988-NMCA-022, ¶¶ 2, 5. The Court held that the nurse was qualified under the statute because "[t]he requirement of employment by a hospital or physician applies only to 'technologists.'" *Id.* ¶¶ 8, 9. The Court of Appeals reasoned that the last antecedent doctrine

> provides that relative and qualifying words, phrases and clauses are to be applied to the words or phrase immediately preceding, and are not to be construed as extending to or including others more remote. Here, the qualifying words are "employed by a hospital or physician." We apply that phrase to the preceding term "technologist" but not to the more remote terms.

*Id.* ¶ 11 (citation omitted).

**{27}** The Court of Appeals recognized that its interpretation of this statute should not "significantly and unnecessarily limit the classes of individuals who could assist in furthering the statute's legislative purpose" so as to not "needlessly impose burdens on the discovery and removal of the intoxicated driver and, thus, thwart the legislative policy." *Id.* ¶¶ 13, 15. The Court stated that its holding was consistent with the "purpose of Section 66-8-103, that is, the safety of the subject and the reliability of the sample." *Id.* ¶ 14.

**{28}** The Court of Appeals addressed a similar issue in *Garcia*. The issue in *Garcia* was "whether an [EMT was] authorized to draw blood for the purpose of determining its alcohol or drug content under the Implied Consent Act." 2016-NMCA-044, ¶ 1. The facts were as follows. While in an ambulance on the way to the hospital, a police officer handed the on-duty EMT an SLD blood draw kit and asked her to draw a blood sample from the defendant. *Id.* ¶¶ 3-4. The EMT agreed and drew blood from the defendant; however, she did not perform the blood draw according to the SLD blood draw procedures because she used the wrong needle to extract the blood sample. *Id.* ¶ 5. The district court suppressed the results of the blood test because the blood draw was improperly performed and the EMT was not qualified. *Id.* ¶¶ 7, 25.

**{29}** The Court of Appeals reasoned that

[b]lood draws to determine the content of alcohol or drugs in blood under the Implied Consent Act [did] not fall under the scope [of the EMT's] license . . . . Moreover, her training . . . [did] not include the protocols for performing blood draws that comply with the Scientific Laboratory Division regulations of the Department of Health under the Implied Consent Act.

*Id*. ¶ 22. The Court of Appeals concluded:

[The d]efendant's blood was drawn by a person who was not qualified to do so, and in accordance with our analysis, the district court properly suppressed the test results on this basis. Section 66-8-103 has a two-fold purpose: to insure the safety and protection of the person whose blood is drawn; and to insure the reliability of the sample. Compliance with Section 66-8-103 advances both of these purposes.

*Id.* ¶ 24 (citation omitted).

**{30}** In *Garcia*, the Court of Appeals stated that neither the EMT's training nor her "certification . . . authorize[d] her to draw blood for the purpose of determining its alcohol or drug content." *Id*. ¶ 22. In contrast, here, it was Atwood's EMT certification *in addition* to her training and experience that qualified her to draw Defendant's blood.

**{31}** Atwood's testimony at the district court evidentiary hearing made clear that she was qualified to draw blood for purposes of determining drug and alcohol content. An exhibit detailing Atwood's official job description stated that one of her duties as an "EMT-B/ER Tech" was to "perform[] legal blood-alcohol blood draws at the request of law enforcement personnel." Atwood testified that she was taught how to perform blood draws by other nurses and technicians. She said that before she was allowed to perform blood draws on her own, there was a six-week orientation period during which another employee supervised her work.

**{32}** Atwood further testified that she had worked for San Juan Regional Medical Center for over a year and during that time had performed "hundreds or thousands" of blood draws. She said that during her most recent hospital shift, she performed twenty-five blood draws. Atwood explained that most of the blood samples she takes from patients are sent to the hospital laboratory and a few go to the police for testing. She then explained the difference between conducting a blood draw for the hospital laboratory versus for the police. She was able to describe the differences between the two processes in detail. At the close of the hearing, Defendant's attorney agreed that, in Defendant's case, Atwood did everything in accordance with the instructions from the sealed blood draw kit and the training that she had received.

**{33}** Atwood stated during the hearing that she had never worked in a laboratory and did not have any laboratory experience. However, based on what happened in this case, it is clear that her lack of laboratory experience did not prevent her from learning how to properly administer a legal blood draw test under the SLD procedures. Through

her training and actual experience in conducting blood draws at the hospital, she developed and practiced the proper technique to perform this procedure.

{34}    Prohibiting medical professionals who possess such training in this area from administering blood draws would "needlessly impose burdens on the discovery and removal of the intoxicated driver and, thus, thwart the legislative policy." *Wiberg*, 1988-NMCA-022, ¶¶ 13, 15. Allowing EMTs who, along with their certification, have the training and experience in the skill of drawing blood to perform legal blood draw tests and who are employed by a hospital or physician to do so, furthers the purpose of the statute to ensure the safety of the patient and the reliability of the blood sample. *See Steere Tank Lines, Inc. v. Rogers*, 1978-NMSC-049, ¶ 6, 91 N.M. 768, 581 P.2d 456 (concluding the purpose of Section 66-8-103 is two-fold: (1) to insure the safety and protection of the person being tested and (2) to insure reliability of the sample). It is the Court's responsibility to resolve any ambiguity in Section 66-8-103 in a way that supports the legislative purpose to "deter driving while intoxicated" and "aid in discovering and removing from the highways the intoxicated driver." *Trujillo*, 1973-NMCA-076, ¶ 21 (internal quotation marks and citation omitted). Therefore, consistent with the legislative purpose of this statute, we interpret the statute as allowing EMTs who are employed by a hospital or physician and who possess the proper education and experience to perform blood draws as "laboratory technician[s]." *See* § 66-8-103.

## B.    Abuse of Discretion

{35}    Next, we turn to the question of whether the district court abused its discretion by suppressing Defendant's blood test results. "[A] court abuses its discretion if it applies an incorrect standard, incorrect substantive law, or its discretionary decision is premised on a misapprehension of the law." *State v. Sena*, 2020-NMSC-011, ¶ 15, 470 P.3d 227 (internal quotation marks and citation omitted). "The standard of review for suppression rulings is whether the law was correctly applied to the facts, viewing them in a manner most favorable to the prevailing party." *State v. Jason L.*, 2000-NMSC-018, ¶ 10, 129 N.M. 119, 2 P.3d 856 (internal quotation marks and citation omitted).

{36}    As we discussed above, Defendant argues that the district court properly interpreted *Garcia*, 2016-NMCA-044, and correctly applied the law to the facts. The State, on the other hand, argues that the district court misinterpreted *Garcia* and misapplied Section 66-8-103 and therefore abused its discretion in excluding the blood test results.

{37}    Based on the foregoing statutory construction analysis, we conclude that the Court of Appeals and the State are correct in their interpretation of the law. It follows then that the district court did indeed abuse its discretion by misinterpreting the law when it suppressed Defendant's blood test results from evidence. Therefore, the Court of Appeals, *Adams*, 2019-NMCA-043, ¶ 34, correctly remanded the case to the district court with instructions for it to render a decision consistent with an accurate interpretation of the law as set forth in its opinion.

**III.     CONCLUSION**

**{38}**    We affirm the Court of Appeals.

**{39}    IT IS SO ORDERED.**

**MICHAEL E. VIGIL, Chief Justice**

**WE CONCUR:**

**C. SHANNON BACON, Justice**

**DAVID K. THOMSON, Justice**

**JULIE J. VARGAS, Justice**