# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2022-NMCA-034**

**Filing Date: April 14, 2022**

**No. A-1-CA-36798**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**ROGER WARFORD,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Fred T. Van Soelen, District Judge**

Hector H. Balderas, Attorney General
Eran Sharon, Assistant Attorney General
Santa Fe, NM

for Appellee

Lindsey Law Firm, LLC
Daniel R. Lindsey
Clovis, NM

for Appellant

## OPINION

**MEDINA, Judge.**

**{1}** After conditionally pleading guilty to driving while under the influence of intoxicating liquor or drugs (DWI), contrary to NMSA 1978, § 66-8-102(A) (2010, amended 2016) [1], Roger Warford (Defendant) appeals the district court's denial of his motion to exclude the results of a blood draw performed pursuant to the Implied Consent Act, NMSA 1978, §§ 66-8-105 to -112 (1978, as amended through 2019). Defendant argues the phlebotomist who drew his blood was not authorized to do so because, according to Defendant, a phlebotomist is not a laboratory technician under

---

[1]Section 66-8-102(D)(3) was held unconstitutional by this Court in *State v. Storey*, 2018-NMCA-009, ¶ 32, 410 P.3d 256. That subsection refers to aggravated DWI, which is not at issue here, and *Storey* did not affect the constitutionality of the subsections we reference in this opinion.

NMSA 1978, § 66-8-103 (1978) and the phlebotomist in this case was not employed by a hospital because her direct employer was a laboratory that contracted with the hospital where she worked. We conclude, consistent with our Supreme Court's recent decision in *State v. Adams*, 2022-NMSC-008, 503 P.3d 1130, that phlebotomists who have adequate training and experience are qualified as laboratory technicians to perform legal blood draws under the Implied Consent Act so long as they were employed to do so by a hospital or physician. *Id.* ¶ 1. We further conclude that, given the facts and circumstances presented in this case, the phlebotomist who drew Defendant's blood was employed by a hospital. Finally, we conclude that Defendant's additional argument that there was insufficient evidence to support the enhancement of his DWI conviction is without merit. We affirm.

**BACKGROUND**

**{2}** In January 2015, Defendant drove into a motel parking lot and parked next to a vehicle in which two police officers were conducting surveillance of a motel room pending receipt of a search warrant. Defendant stepped out of his truck, staggered to the passenger side of the officers' vehicle, and asked them if they were police officers. Defendant then walked towards the hotel, went upstairs, and approached the room the officers intended to search. The officers prevented Defendant from entering the room. Defendant had bloodshot and watery eyes, an odor of alcohol on his breath, and slurred speech. He also had two sixteen-ounce beer cans, one half empty and one unopened, in his jacket. Defendant admitted to having consumed five to six sixteen-ounce beers.

**{3}** A uniformed officer was summoned to investigate Defendant for DWI. Defendant failed standardized field sobriety tests and was arrested for DWI. Defendant agreed to a blood test and was transported to the Plains Regional Medical Center (PRMC), a hospital in Clovis, where Mirna Gaxiola, a certified phlebotomist, drew Defendant's blood for testing.

**{4}** Defendant was charged with DWI (4th Offense). Defendant moved to exclude his blood test results. Defendant asserted the evidence was insufficient to demonstrate the testing was conducted in accordance with the Implied Consent Act, under Section 66-8-103, which provides that "[o]nly a physician, licensed professional or practical nurse or laboratory technician or technologist employed by a hospital or physician shall withdraw blood from any person in the performance of a blood-alcohol test." *Id.*; *see also* § 66-8-109(A) ("Only the persons authorized by Section 66-8-103 . . . shall withdraw blood from any person for the purpose of determining its alcohol or drug content.").

**{5}** The State responded that under Section 66-8-103, laboratory technicians are included in the categories of approved medical personnel authorized to draw blood under Section 66-8-109 and that under 7.33.2.15(A)(1) NMAC, the term laboratory technician includes phlebotomists. From this, the State argued that Gaxiola was authorized to draw Defendant's blood under Section 66-8-103 because she attended and completed a Phlebotomy Technique Training course at Eastern New Mexico University, and upon completion was certified as a Phlebotomy Technician.

**{6}** During a hearing on the motion, Defendant argued the district court was required to exclude the blood test because Gaxiola did not fall into any of the statutory categories, and therefore was not qualified to conduct the test. Defendant provided the district court with a copy of a recorded pretrial interview he conducted of Gaxiola in which she stated she was a certified phlebotomist, not a licensed professional, laboratory technologist or technician, or hospital employee.

**{7}** At a later hearing, the district court denied Defendant's motion to exclude, explaining that, despite Gaxiola's statements, based on its own legal research and given Gaxiola's status as a phlebotomist for TriCore Laboratory (TriCore), which contracts with the hospital to perform all of the hospital's blood services, she "is a technician under the statute employed by the hospital for the purposes of the Implied Consent Act."

**{8}** Defendant entered a conditional plea of no contest to DWI, reserving the right to appeal the ruling on any motion filed in the case. Defendant then appealed to this Court. After ordering supplemental briefing on two issues,[2] we certified this case to the New Mexico Supreme Court, as it presented a similar question of statutory construction to six other cases before our Supreme Court.

**{9}** Following acceptance of the certification of this case, our Supreme Court issued an opinion in *Adams*, holding that an emergency medical technician (EMT) who was employed by a hospital or physician and had adequate training and experience in performing blood draws qualified as a "laboratory technician" for the purposes of Section 66-8-103. *Adams*, 2022-NMSC-008, ¶ 34. Our Supreme Court subsequently quashed certification of this case, returning it to this Court.

## DISCUSSION

### I. The District Court's Denial of the Motion to Exclude the Blood Test Results Was Not an Abuse of Discretion

**{10}** Generally, "[w]e review the [district] court's decision to exclude or admit evidence for an abuse of discretion." *State v. Hanson*, 2015-NMCA-057, ¶ 5, 348 P.3d 1070. "This case requires us to engage in statutory interpretation to determine what the appropriate foundation is for admitting the results of blood tests to determine the content of alcohol or drugs under the Implied Consent Act. We do so under a de novo standard of review." *State v. Garcia*, 2016-NMCA-044, ¶ 8, 370 P.3d 791.

**{11}** The Implied Consent Act provides in relevant part that "[o]nly the persons authorized by Section 66-8-103 . . . shall withdraw blood from any person for the purpose of determining its alcohol or drug content." Section 66-8-109(A). Section 66-8-103 in turn limits the class of persons who may withdraw blood to the following: "Only a

---

2The parties were ordered to brief (1) whether Section 66-8-103 requires a laboratory technician to be employed by a hospital or physician; and (2) assuming Gaxiola was a laboratory technician, whether she was employed by a hospital or physician under Section 66-8-103.

physician, licensed professional or practical nurse or laboratory technician or technologist employed by a hospital or physician shall withdraw blood from any person in the performance of a blood-alcohol test."

{12}   On appeal, Defendant contends that the phlebotomist who drew his blood does not qualify as a "laboratory technician," is not employed by a hospital or physician, and, as a result, was not authorized to perform blood draws under Section 66-8-103. We first address whether the phlebotomist in this case qualified as a laboratory technician. Concluding she does, we next address whether the fact that the phlebotomist was employed by TriCore, and not directly with the hospital, renders her unqualified. We conclude that she was qualified.

## A.   The Phlebotomist in This Case Qualified as a Laboratory Technician

{13}   In light of our Supreme Court's recent opinion in *Adams* and for the reasons that follow, we hold that the district court correctly concluded that Gaxiola was a laboratory technician under Section 66-8-103.

{14}   In *Adams*, addressing arguments highly similar to those here, our Supreme Court determined that an EMT is qualified to draw blood as a "laboratory technician" under Section 66-8-103 "so long as they were employed to do so by a hospital or physician and have adequate training and experience." *Adams*, 2022-NMSC-008, ¶ 1. *Adams* addressed whether this Court's decision in *Garcia*, which held that the EMT in that case was not authorized to draw blood under Section 66-8-103, precluded all EMTs from being qualified to draw blood under that provision. *See Garcia*, 2016-NMCA-044, ¶¶ 1, 21-24. The defendant in *Adams* argued that *Garcia* stood for the proposition that EMTs did not fall under the five enumerated categories of those who may perform blood draws and that the Legislature did not intend to authorize legal blood draws by anyone falling outside those categories. *Adams*, 2022-NMSC-008, ¶ 17. Our Supreme Court rejected these contentions. The Court concluded, after examining the dictionary definitions of "laboratory technician," that the term "laboratory technician" was ambiguous on its face, *id.* ¶¶ 11-15, and then proceeded to examine the legislative purpose of the Implied Consent Act, *see id.* ¶¶ 16-29. As part of this examination, the Court contrasted the facts of *Garcia* with the facts in *Adams*. In *Garcia*, the EMT who performed the blood draw did so improperly and was not trained to perform blood draws for the purposes of the Implied Consent Act. *Adams*, 2022-NMSC-008, ¶¶ 28-29. In contrast, the EMT who performed the blood draw in *Adams* had specifically been trained to perform blood draws "for [the] purposes of determining drug and alcohol content" and one of her job duties was to "perform legal blood-alcohol blood draws at the request of law enforcement personnel." *Id.* ¶ 31 (alteration, internal quotation marks, and citation omitted). The EMT also had performed thousands of blood draws and performed the contested blood draw in accordance with the instructions in the Scientific Laboratory Division (SLD) kit. *Id.* ¶ 32.

{15}   Our Supreme Court then held that "EMTs who are employed by a hospital or physician and who possess the proper education and experience" are qualified as

laboratory technicians to perform blood draws under Section 66-8-103. *Adams*, 2022-NMSC-008, ¶ 34. In so holding, our Supreme Court observed that "[p]rohibiting medical professionals who possess such training in this area from administering blood draws would needlessly impose burdens on the discovery and removal of the intoxicated driver and, thus, thwart the legislative policy." *Id.* (internal quotation marks and citation omitted).

**{16}** *Adams* informs our analysis in this case. The State argues that Gaxiola is qualified to draw blood under Section 66-8-103 because the Legislature intended that people with her skills and experience should fall within the "laboratory technician" category, noting that SLD's regulations specifically include "phlebotomists" in the definition of laboratory technicians. *See* 7.33.2.15(A) NMAC ("The term laboratory technician shall include phlebotomists."); *cf. Adams*, 2022-NMSC-008, ¶ 29 (stating that this Court's opinion in *Garcia* addressed the EMT's lack of qualifications to draw blood for the purposes of Section 66-8-103, not whether an EMT with greater experience and training could potentially draw blood under the statute). We agree.

**{17}** The record reflects that Gaxiola, like the EMT in *Adams*, had the requisite training and experience to draw Defendant's blood. The district court found that Gaxiola, a phlebotomist, was a technician under the statute. Defendant does not contest the finding, which was based on the pretrial interview Defendant submitted to the court. Gaxiola completed a phlebotomy course from Eastern New Mexico University in Portales. Gaxiola stated that upon graduating from the course she received a certificate demonstrating that she was a certified phlebotomist. Soon after graduation, she was hired by TriCore as a Clinical Lab Assistant I to perform blood draws at PRMC. She also received additional training in blood draw procedures once placed at PRMC. *See Adams*, 2022-NMSC-008, ¶ 31 ("[The EMT] testified that she was taught how to perform blood draws by other nurses and technicians [at the hospital]."). Gaxiola explained that she was the only clinical lab assistant working during her shifts, which entailed conducting blood draws during morning rounds at the hospital, and stated that she performed approximately fifty blood draws during each of her shifts.

**{18}** Gaxiola also demonstrated knowledge of legal blood draw procedures, including ensuring the SLD kit was sealed and not expired, following the instructions on the kit, and sealing the kit and returning it to the requesting officer. Gaxiola stated that when law enforcement presented her with individuals for implied consent blood draws, she performed those blood draws in a room designated for law enforcement related blood draws. *See Adams*, 2022-NMSC-008, ¶ 32 (observing that the EMT could explain the difference between a hospital blood draw and a law enforcement blood draw). And, when officers provided her with SLD blood draw test kits, she only used kits that were sealed and not expired. *See Garcia*, 2016-NMCA-044, ¶ 4 ("SLD-approved blood draw kits include everything that is needed for a blood draw to ensure continuity and standardization, and to avoid compromising the accuracy and integrity of blood samples."). She followed the instructions that came with the kit. Once she completed the blood draw, Gaxiola sealed the test kit box and returned it to the requesting officer.

**{19}** Consistent with *Adams*, we conclude that prohibiting phlebotomists—with adequate training and experience to perform legal blood draws—from administering blood draws would thwart the legislative purpose of the Implied Consent Act. 2022-NMSC-008, ¶ 34. We therefore conclude that Gaxiola, who possessed the requisite training and experience to perform blood draws, qualified as a laboratory technician within the meaning of Section 66-8-103, so long as she was employed by a hospital or physician—the matter we turn to next.

**B.    The Phlebotomist in This Case Was "Employed" by a Hospital Within the Meaning of Section 66-8-103**[3]

**{20}** We next determine whether Gaxiola was an employee of a hospital for the purposes of Section 66-8-103. *See Adams*, 2022-NMSC-008, ¶ 7 (clarifying in part that "in order for a medical professional to qualify as a laboratory technician for the purposes of performing legal blood draws, the person must be employed by a hospital or physician to perform blood draws"). Defendant argues that even if Gaxiola was "deemed a technician or technologist," she was not qualified to perform his blood draw because she was not employed by a hospital or physician as specified in Section 66-8-103. We disagree and explain.

**{21}** We first observe that, while *Adams* stated that Section 66-8-103 requires a laboratory technician or technologist to be employed by a hospital, *Adams* did not consider what the term "employed" encompassed. *See Adams*, 2022-NMSC-008, ¶¶ 1, 7 (stating that a laboratory technician must be "employed to [draw blood] by a hospital," but not interpreting the term "employed"). Thus, whether Gaxiola is considered an employee of a hospital for the purposes of Section 66-8-103 is a question of first impression regarding the interpretation of the statute that we review de novo. *See State v. Duhon*, 2005-NMCA-120, ¶ 10, 138 N.M. 466, 122 P.3d 50.

**{22}** "Our primary goal when interpreting statutory language is to give effect to the intent of the [L]egislature." *State v. Torres*, 2006-NMCA-106, ¶ 8, 140 N.M. 230, 141 P.3d 1284. "We first look to the plain meaning of the statutory language." *State v. Farish*, 2021-NMSC-030, ¶ 11, 499 P.3d 622. "When words are not otherwise defined in a statute, we give those words their ordinary meaning absent clear and express legislative intention to the contrary. To do so, we consult common dictionary definitions." *Adams*, 2022-NMSC-008, ¶ 10 (alteration, internal quotation marks, and citation omitted). "Unless ambiguity exists, [the appellate courts] must adhere to the plain meaning of the language." *Id.* (internal quotation marks and citation omitted). We, however, will not do so if the plain meaning "leads to an absurd or unreasonable result." *State v. Marshall*, 2004-NMCA-104, ¶ 7, 136 N.M. 240, 96 P.3d 801. "A statute is ambiguous when it can be understood by reasonably well-informed persons in two or more different senses." *Adams*, 2022-NMSC-008, ¶ 10 (internal quotation marks and

---

[3]During the January 30, 2017 hearing, defense counsel argued that Section 66-8-103 required a technician to be employed by a hospital and that Gaxiola was not a hospital employee. The district court later ruled that Gaxiola was an employee of the hospital for purposes of the statute. We therefore reject the State's contention that this issue was not preserved.

citation omitted). "If the relevant statutory language is unclear, ambiguous, or reasonably subject to multiple interpretations, then the Court should proceed with further statutory analysis." *State v. Almanzar*, 2014-NMSC-001, ¶ 15, 316 P.3d 183. In this context, our courts often have turned to the legislative purpose of the Implied Consent Act to discern legislative intent. *See, e.g.*, *Adams*, 2022-NMSC-008, ¶¶ 16-34; *Garcia*, 2016-NMCA-044, ¶ 24; *State v. Wiberg*, 1988-NMCA-022, ¶¶ 13-17, 107 N.M. 152, 754 P.2d 529; *State v. Trujillo*, 1973-NMCA-076, ¶ 21, 85 N.M. 208, 510 P.2d 1079. "Accordingly, we analyze these statutes not only within the statutory scheme of the Motor Vehicle Code but also within the context of the policy underlying the offense of DWI. The purpose of our DWI legislation is to protect the health, safety, and welfare of the people of New Mexico." *State v. Johnson*, 2001-NMSC-001, ¶ 6, 130 N.M. 6, 15 P.3d 1233.

**{23}** We first observe that the term "employ" means "[t]o commission and entrust with the performance of certain acts or functions" in addition to its often-used meaning "[t]o hire." *Employ*, *Black's Law Dictionary* (11th ed. 2019). Defendant advances a strict adherence to the meaning of employ, advocating that a laboratory technician must be directly employed by a hospital or physician. The State, in contrast, argues that the term should be construed more broadly in light of the purposes of the Implied Consent Act. We agree with the State.

**{24}** We conclude that the term "employ" is ambiguous on its face, in that it can reasonably be understood to have more than one meaning, as both the State and Defendant have argued on appeal. We therefore turn next to the legislative purpose of Section 66-8-103. *See Adams*, 2022-NMSC-008, ¶ 15. We must analyze the term "through the lens of the Legislature's intended purpose, which [our Supreme Court has] conclude[d] encompasses two goals: (1) to protect patients subject to a blood draw and (2) to ensure the collection of a reliable blood sample for use in DWI prosecutions." *Id*. ¶ 22. Contrary to Defendant's argument, requiring a laboratory technician to be directly employed by a hospital or physician is not necessary to achieve these purposes. An examination of the facts and circumstances of this case makes this evident.

**{25}** Upon completing her phlebotomy class, Gaxiola applied for and was hired as a Clinical Lab Assistant I by TriCore in August or September 2014. PRMC contracted with TriCore to perform blood draws. TriCore placed Gaxiola at PRMC to perform the hospital's blood draws, where she received additional training in PRMC's blood-draw procedures. Gaxiola worked at PRMC through TriCore for nearly two years. Gaxiola's explanation of her job duties as a phlebotomist at PRMC shows that PRMC entrusted her with the performance of blood draws during her shifts, even if PRMC did not hire her directly. In sum, the record demonstrates that PRMC contracted with TriCore, who in turn hired Gaxiola, a phlebotomist, to perform legal blood draws, trained her in blood-draw procedures, and determined she was qualified to perform blood draws, including legal blood-draw tests.

**{26}** In light of this record, determining that Gaxiola was an employee of the hospital for the purposes of Section 66-8-103 is consistent with the dual purposes of this

provision—i.e., ensuring the safety of Defendant and ensuring the reliability of the blood test. *See Adams*, 2022-NMSC-008, ¶ 34 ("Allowing EMTs who, along with their certification, have the training and experience in the skill of drawing blood to perform legal blood draw tests and who are employed by a hospital or physician to do so, furthers the purpose of the statute to ensure the safety of the patient and the reliability of the blood sample."). Furthermore, determining that Gaxiola was an employee of PRMC supports Section 66-8-103's purpose "to deter driving while intoxicated and aid in discovering and removing from the highways the intoxicated driver." *See Adams*, 2022-NMSC-008, ¶ 34 (internal quotation marks and citation omitted). It is also consistent with this Court's and our Supreme Court's previous constructions of Section 66-8-103 "to broaden, not narrow, the category of individuals authorized to draw blood." *Adams*, 2022-NMSC-008, ¶ 23; *see id.* ¶¶ 23-29 (discussing this Court's decisions in *Trujillo*, *Wiberg*, and *Garcia*). Holding otherwise—i.e., that Gaxiola was not a hospital employee simply because she was not directly employed by the hospital or a physician but rather employed by TriCore, a contractor used by the hospital to perform blood draws—would "unnecessarily limit the classes of individuals who could assist in furthering the statute's legislative purpose" and produce the absurd result of disqualifying technicians the hospital trained to perform implied consent blood draws. *See id.* ¶ 27 (internal quotation marks and citation omitted); *Wiberg*, 1988-NMCA-022, ¶ 13 (rejecting a construction of Section 66-8-103 as it would "unnecessarily limit the classes of individuals who could assist in furthering the statute's legislative purpose" of "aid[ing] in discovering and removing the intoxicated driver from the highways"). Consistent with the legislative purpose of the Implied Consent Act, we interpret the term "employ" in Section 66-8-103 to encompass Gaxiola's relationship to PRMC, which entrusted her with the performance of legal blood draws. *See Employ, Black's Law Dictionary* (11th ed. 2019); *Adams*, 2022-NMSC-008, ¶ 1 ("[S]uch medical professionals are qualified to draw blood under [Section 66-8-103] so long as they were *employed to do so* by a hospital." (emphasis added)); *see also Adams*, 2022-NMSC-008, ¶ 34 ("It is the Court's responsibility to resolve any ambiguity in Section 66-8-103 in a way that supports the legislative purpose to deter driving while intoxicated and aid in discovering and removing from the highways the intoxicated driver." (internal quotation marks and citation omitted)).

**{27}** Therefore, based on the foregoing, we hold that Gaxiola was qualified, under Section 66-8-103, as a laboratory technician employed by a hospital to perform Defendant's blood draw, and we affirm the district court's denial of Defendant's motion to exclude.

## II.     The District Court Properly Enhanced Defendant's DWI Conviction

**{28}** Defendant next challenges the use of one of his prior DWI convictions to enhance his DWI sentence in this case, arguing the State did not meet its burden in showing that the prior conviction was counseled. For the reasons that follow, we affirm. A person convicted of DWI who has been convicted of previous DWI charges faces enhanced penalties. *See* § 66-8-102(F)-(J) (2010). When prior DWI convictions are used to enhance a defendant's sentence, "[t]he [s]tate bears the initial burden of

establishing a prima facie case of a defendant's previous convictions." *State v. Sedillo*, 2001-NMCA-001, ¶ 5, 130 N.M. 98, 18 P.3d 1051. "Proof beyond a reasonable doubt of the prior DWI convictions is not needed." *Id.* Once a prima facie case is established, "[t]he defendant is then entitled to bring forth contrary evidence. However, the [s]tate bears the ultimate burden of persuasion on the validity of prior convictions." *Id.* (citation omitted).

**{29}** The State attached a certified copy of an abstract of record from the Motor Vehicle Division of the Taxation and Revenue Department (1991 Abstract) to its enhancement information. The 1991 Abstract documented Defendant's August 1990 DWI arrest, identified a court docket number, and showed that a hearing was held in October 1991; Defendant requested counsel, he entered a plea of guilty, and he received a sentence of ninety days with eighty-three days suspended. In addition to identifying the sentence and fine imposed for the DWI conviction, the "remarks" box on the 1991 Abstract contains the text "P.D. Raina Owen, 620 Roma NW" and is signed by Bernalillo County Metropolitan Court Judge Mark Shapiro.

**{30}** Defendant argued below, as he does on appeal, that the 1991 Abstract did not establish that an attorney was appointed to represent him. The district court reviewed the abstract and stated during a hearing that the name of Raina Owen was located in the 1991 Abstract where the name of defense counsel's name usually appears. Defense counsel suggested that "P.D." could stand for police department or probation department and that the address of 620 Roma NW might be the address for the Albuquerque Police Department. The district court took the matter under advisement.

**{31}** In September 2017, the district court issued a letter decision, finding that the 1991 Abstract showed Defendant requested counsel and "includes what appears to be the name and address of an attorney, 'P.D. Raina Owen, 620 Roma NW.'" The district court noted that the defense had not come forward with evidence challenging the validity of Defendant's 1991 DWI conviction, rejected Defendant's argument that the notation "P.D. Raina Owen, 620 Roma NW" could have been the address of the police department, and concluded that Defendant's 1991 prior conviction would be used to enhance Defendant's sentence.

**{32}** The parties appeared for a sentencing hearing during which defense counsel again asserted that "P.D. Raina Owen 620 Roma NW" might be reference to a "police station" or "some other thing" and objected to the district court's finding that it was documentation of the attorney who represented Defendant in 1991. The district court reiterated that the defense had not come forward with evidence to challenge the validity of the State's prima facie evidence of Defendant's prior DWI conviction, and stated: (1) where the name Raina Owen and the 620 Roma address appear on the abstract is the location the court knows the name of defense counsel is located; and (2) based on that knowledge, the most reasonable explanation is that "P.D." stands for "public defender." The district court enhanced Defendant's DWI conviction with his 1991 DWI conviction.

**{33}** "The burden on making a prima facie case is not onerous on the [s]tate." *State v. Simmons*, 2006-NMSC-044, ¶ 14, 140 N.M. 311, 142 P.3d 899 (discussing habitual offender enhancements). A "prima facie case" is defined as "a party's production of enough evidence to allow the fact-trier to infer the fact at issue and rule in the party's favor." *Yurcic v. City of Gallup*, 2013-NMCA-039, ¶ 29, 298 P.3d 500 (alteration, internal quotation marks, and citation omitted). The 1991 Abstract undisputedly contained the following evidence: (1) Defendant's 1990 arrest in Bernalillo County; (2) Defendant's request for an attorney; (3) Defendant's DWI guilty plea; (4) the finding of Defendant's guilt in 1991; (5) the name and signature of the judge who found him guilty; (6) a hand-written notation of "P.D. Raina Owen, 620 Roma NW"; and (7) Defendant's DWI sentence. The district court used its experience to find the information sufficient to infer that Defendant was represented by counsel, Raina Owen, when he plead guilty to DWI in 1991, because the name Raina Owen appeared on the abstract where the district court expects defense counsel to be identified.[4] We conclude that the foregoing was sufficient to meet the State's initial burden of proving its prima facie case of Defendant's 1991 DWI conviction. *See Sedillo*, 2001-NMCA-001, ¶¶ 8-9.

**{34}** The burden then shifted to Defendant to show that his prior DWI conviction was invalid by demonstrating that the notation "P.D. Raina Owen, 620 Roma NW" does not indicate Defendant was represented by counsel. *See Simmons*, 2006-NMSC-044, ¶ 13 ("[T]he [s]tate must make its prima facie showing, including all of the required elements for a prior felony conviction as defined by the habitual offender statute, and then the burden of proof shifts to the defendant."). Defendant did not do so. Instead, Defendant speculated that the initials "P.D." could stand for "police department" or "probation department" and that "620 Roma NW" might be the address of the Albuquerque Police Department. Counsel's speculations are not evidence demonstrating the invalidity of a prior conviction. *See State v. Cordova*, 2014-NMCA-081, ¶ 10, 331 P.3d 980 ("[A]rgument of counsel is not evidence." (internal quotation marks and citation omitted)). To the extent Defendant's conjectures gave rise to a conflict in the interpretation of the information contained on the 1991 Abstract, the district court, as fact-finder, was entitled to reject Defendant's interpretation of the evidence. *See Sedillo*, 2001-NMCA-001, ¶ 1.

**{35}** In sum, we conclude that the State met its initial burden of proving a prima facie case of Defendant's 1991 DWI conviction, and Defendant failed to rebut this showing.

## CONCLUSION

**{36}** For the foregoing reasons, we affirm the district court's denial of Defendant's motion to exclude his blood test results and the enhancement of his sentence.

---

4Defendant's unsubstantiated accusation that the district court's finding was arrived at through independent investigation of facts outside the record, in violation of Rule 21-209(C) NMRA, supplies no basis for relief on appeal. *See State v. Hall*, 2013-NMSC-001, ¶ 28, 294 P.3d 1235 ("It is not our practice to rely on assertions of counsel unaccompanied by support in the record." (internal quotation marks and citation omitted)).

**{37}** IT IS SO ORDERED.

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**ZACHARY A. IVES, Judge**